634 P.2d 391

**STATE of Arizona, Appellee,**

v.

**Tony VASQUEZ, Appellant.**

**No. 5245.**

Supreme Court of Arizona, In Banc.

Sept. 23, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Stanley L. Patchell, Asst. Attys. Gen., Phoenix, for appellee.

Thomas A. Moran, Yuma, for appellant.

CAMERON, Justice.

Defendant, Tony Vasquez, was convicted in absentia by a jury on 30 March 1979 of two counts of armed robbery, a dangerous offense, in violation of A.R.S. § 13–1904. On 20 April 1979, defendant was sentenced to concurrent terms of eight years in prison on each armed robbery count. A.R.S. § 13–604(K). Defendant now appeals the convictions and sentences. We have jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

Defendant raises two issues on appeal:
1. Was defendant's due process right to be tried by a fair and impartial jury abridged?
2. Was the sentence excessive?

The facts necessary to a resolution of these issues are as follows. On 6 January 1979, defendant attended a party at a friend's house in Yuma, Arizona. During the course of the party, defendant became intoxicated and told co-defendant Daniel Lopez, Pete Ayala, and others that he wanted to rob the Economy Gas Station also located in Yuma. Between 1:00 and 2:00 a. m. on 7 January, defendant, Lopez, Ayala, and three other men left the party in Ayala's car to go to another party. Unable to find the other party, the men "cruised" the streets of Yuma until defendant suggested that they go "check out" the gas station. After the car was parked in the alley to the rear of the gas station, defendant and Lopez approached the gas station.

Ronald Boston, the attendant on duty and an acquaintance of defendant, was conversing with a friend, Cecil Brand, in the gas station's office when defendant and Lopez

entered. Defendant removed a pistol from his coat, swept it in an arc across the room, pointed the pistol at Boston and ordered him to surrender the pouch containing the evening's receipts. When Boston did not readily comply, defendant extracted the pouch from one of Boston's pockets. While this was occurring, Lopez took Cecil Brand's wallet after first ordering Brand to turn around and stand against the wall. As defendant and Lopez left the office, Lopez stated, "Hey, if you don't remember us, just remember how big this gun is."

Later that morning, defendant and Lopez were arrested and the wallet and pouch were recovered. Defendant was convicted of two counts of armed robbery and sentenced to concurrent terms of eight years in prison. From the convictions and sentences imposed, defendant appeals.

## JUROR MISCONDUCT

The defendant raises two questions as to alleged juror misconduct. The first concerned Mrs. Uribe. After the jury had been selected and the first witness was testifying, the following transpired:

"THE COURT: Mr. Dawley, I'd like to stop at this point. One of the jurors has handed a note to the bailiff saying that, from what has been said that she believes she was told about this case after it happened. So of course the only question is whether or not the juror formed any opinion which could not be set aside so that the verdict could be based solely upon what takes place in this courtroom.

And, Mrs. Uribe, you are the one that wrote the note. Did you form any opinion at that time?

"MRS. URIBE: No. Would you like to know the circumstances?

"THE COURT: Not especially. I just want to be sure you haven't formed any opinion, and if you have.

"MRS. URIBE: No, I was just told about it. I think it must have been the day or maybe two after it happened, shortly after it happened one of the witnesses told me that this had happened, but

at the time this morning from the dates and everything I didn't connect until the prosecuting attorney started talking.

"THE COURT: That's all right if you don't think you have formed any opinion that can't be set aside.

"MRS. URIBE: No, I was just told her version of it. But I thought you should know this.

"THE COURT: All right. Thank you. You may proceed."

■ Failure of a juror to disclose knowledge of the facts of the case during voir dire or a juror's contact with a witness during trial, although improper, *State v. MacDonald*, 110 Ariz. 152, 515 P.2d 1172 (1973), is not grounds for a mistrial or new trial unless defendant establishes that the "misconduct was prejudicial to the rights of the defendant or when such a state of facts is shown that it may fairly be presumed * * that the defendant's rights were prejudiced." *State v. Adams*, 27 Ariz.App. 389, 392, 555 P.2d 358, 361 (1976); see *State v. Ebert*, 110 Ariz. 408, 519 P.2d 1149 (1974).

■ It would appear that Mrs. Uribe was a conscientious juror and when her memory was jogged by Ronald Boston's testimony, she immediately informed the court. Mrs. Uribe's assurances of impartiality would appear to have considerable weight when considered in connection with her action in bringing these facts to the attention of the court.

Our Court of Appeals has stated:

"The trial judge is in a superior position to judge the prejudicial effect of nondisclosure of facts relevant to a juror's bias and we will not interfere absent clear abuse of discretion." *State v. Robinson*, 127 Ariz. 324, 329, 620 P.2d 703, 708 (1980), cert. denied 450 U.S. 1044, 101 S.Ct. 1765, 68 L.Ed.2d 242 (1981).

Defendant, however, argues that the nondisclosure deprived him of the right to intelligently exercise his peremptory challenges. *State v. Ortiz*, 117 Ariz. 264, 571 P.2d 1060 (App.1977). We do not believe, however, that the information mistakenly not dis-

closed by Mrs. Uribe during voir dire was of such character as to indicate a probable bias or prejudice to defendant's right of peremptory challenge. The juror did not connect the facts she had previously received with the case she was called upon to decide until evidence was presented. On voir dire, her answers were given in good faith and were not the result of bias or an attempt to conceal a belief in defendant's guilt. Even if she had remembered the conversation with the witness, she could still have been qualified as a juror. The United States Supreme Court has stated, " * * * [q]ualified jurors need not * * * be totally ignorant of the facts and issues involved. * * *" *Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594–95 (1975); see *State v. (Ricky) Tison,* 129 Ariz. 526, 633 P.2d 335 (1981); *State v. Narten,* 99 Ariz. 116, 407 P.2d 81 (1965), cert. denied, 384 U.S. 1008, 86 S.Ct. 1985, 16 L.Ed.2d 1021 (1966). There has been no showing of prejudice to the defendant. We find no error.

The communication between the witness and Juror Desch is, however, more troublesome. During the first recess, the witness Ronald Boston spoke with Mr. Desch. The defense counsel moved for a mistrial stating:

" * * * while we were at recess, I noticed Mr. Boston and Mr. Desch, I guess, were talking together. I understand it was not about the case, but the fact that they were exchanging information or whatever matters seems like they are being a little too friendly, the key witness for the State and one of the jurors, and I would move for a mistrial based upon that also."

The court questioned Boston out of the hearing of the jury on the nature of his conversation with the juror:

"THE COURT: Mr. Boston, I will ask you, you are present, what was the conversation about?

"MR. BOSTON: We were just talking; that's about it. There was no real subject behind it.

"THE COURT: Well, about what though?

"MR. BOSTON: We were talking about me when I got arrested back in Missouri about eight years ago. I was telling him, he told me, well, he is off for the day and all this stuff. I was complaining about having to go to work and everything after this.

\* \* \* \* \* \*

"MR. HART [CO–DEFENDANT'S COUNSEL]: Your Honor, may I inquire; are they friends?

"MR. BOSTON: No, I have never met him.

"THE COURT: It doesn't sound like it is prejudicial to the defense."

The trial court noted the crowded conditions of the court house:

"Here in Yuma County where the witnesses and the jurors and the judges and the clerks and everybody has to go through the same corridor, and there is very little room for anybody to sit except out in the lobby where everyone is, it is pretty difficult for anybody, a witness or anyone not to be unfriendly. \* \* \*"

And stated he did not believe the jury was prejudiced. He did, however, admonish the jury as follows:

"Ladies and gentlemen, before the testimony starts, I'd like to say that a question has come up about a witness talking to a member of the jury, and that in some ways is unavoidable in our situation here. However, it raises, it always then requires some inquiry about what the conversation was about, and Mrs. Uribe pointed to herself, but she wasn't the one we were talking about. So anyway, what I have to say is that you should avoid conversation with the witnesses or parties or judges or lawyers or anybody because it may be suspected that you are discussing something you shouldn't be discussing. And with that warning, I don't think we need to go any further into it."

The conversation between a witness and a juror during a recess can be prejudicial: " * * * the law is clear that communications between third parties or witnesses and jurors will be closely scanned. And

if such communications refer to the case and have a tendency to color the minds of the juror in such a way as to make impossible a fair and impartial trial and are thus prejudicial to the complaining party, a new trial should be granted." *Whitson v. State*, 65 Ariz. 395, 399, 181 P.2d 822, 824 (1947).

In the present case, however, the conversation was unrelated to the trial. If it was prejudicial at all, it would appear to be prejudicial to the State because a victim of the crime and the State's witness, Ronald Boston, mentioned his prior arrest record in Missouri. Idle conversation relating to subjects unrelated to the case is generally not grounds for a mistrial. *State v. Johnson*, 97 Ariz. 27, 396 P.2d 392 (1964); see *State v. Mangrum*, 98 Ariz. 279, 403 P.2d 925 (1965); Annot., "Prejudicial Effect, in Criminal Case, of Communications between Witnesses and Jurors," 9 A.L.R.3d 1275 (1966). Our Court of Appeals has stated:

"We are only justified in disturbing the verdict of guilty on account of the alleged misconduct of a juror when it is shown that such misconduct was prejudicial to the rights of the defendant, or when such a state of facts is shown that it may fairly be presumed therefrom that the defendant's rights were prejudiced." *State v. Adams*, 27 Ariz.App. 389, 392, 555 P.2d 358, 361 (1976).

The trial court did not abuse its discretion in denying the motion for mistrial based on Juror Desch's conversation with Ronald Boston. *State v. MacDonald*, supra; *State v. Johnson*, supra; *State v. Garaygordobil*, 89 Ariz. 161, 359 P.2d 753 (1961). We find no error.

### EXCESSIVE SENTENCE

Defendant was sentenced to concurrent eight year terms of incarceration for committing two counts of armed robbery, a class 2 dangerous felony, in violation of A.R.S. §§ 13–604 and 13–1904. The presumptive sentence for a first time dangerous class 2 offender is 10.5 years, A.R.S. § 13–604(G); *State v. Martinez*, 127 Ariz. 444, 622 P.2d 3 (1980), therefore, defendant was sentenced to less than the presumptive term.

Defendant argues that the eight year concurrent sentences are excessive and should be modified by this court. We have power to reduce a sentence pursuant to A.R.S. § 13–4037, but if the sentence imposed is within statutory limits, as here, it will be upheld unless, under the circumstances, the trial judge clearly abused his discretion. *State v. Malory*, 113 Ariz. 480, 557 P.2d 165 (1976). An abuse of discretion occurs when the judge's decision is characterized as capricious or arbitrary, or by a failure to adequately investigate all the facts and circumstances necessary to intelligently exercise sound discretion. *State v. Patton*, 120 Ariz. 386, 586 P.2d 635 (1978).

Defendant contends that the eight year concurrent sentences are excessive in view of defendant's age, 19 years, and state of intoxication at the time the offenses were committed. As the trial judge's sentencing memorandum indicates, these factors were adequately considered:

" * * * The evidence permitted an inference that he had planned the robbery for a period of several days prior to the robbery and that he was the instigator of the crime the night it was committed. He used a loaded gun and was the dominant person at the scene, although he was helped by an accomplice, Daniel Lopez. "Defendant was only 19 years of age at the time, was intoxicated, was known to one of his victims, and went back to his home after the robbery. The police were waiting for him when he arrived. It appears that the crime was committed in a mood of drunken recklessness. The money was recovered and no one was injured."

And prior to sentencing the judge stated: "Mr. Vasquez is younger, he was 19. However, he was the person who apparently planned the robbery and held the gun * * *."

We find no abuse of discretion.

Judgments of conviction and sentences affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.