[Nos. 3781–II; 4387–II.   Division Two.   October 30, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. ALLEN
DALE HUDLOW, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS
B. HARPER, *Appellant.*

*Robert J. Banghart,* for appellant Hudlow.

*Ronald D. Ness* and *Matosich & Ness,* for appellant
Harper.

*C. Danny Clem, Prosecuting Attorney,* and *Warren K. Sharpe, Deputy,* for respondent.

REED, C.J.—In a joint trial, Allen Dale Hudlow was convicted of two counts of first degree kidnapping, two counts of first degree rape, and second degree assault; Douglas B. Harper was found guilty of two counts of first degree kidnapping and one count of first degree rape. Hudlow was sentenced as a habitual criminal. The dispositive issue on appeal is the trial court's application of RCW 9.79.150(3), the rape victim shield statute. We hold that the court abused its discretion by excluding evidence of the two victims' promiscuity, and reverse.

According to the two victims—ages 18 and 19—whom we will call Ellen Strong and Tammy Smith,[1] they were hitchhiking in Bremerton and accepted a ride from defendants. When the group arrived at the girls' intended destination, the men would not let them leave the car and Hudlow used a knife to force Ms. Smith back onto the seat. Defendants then drove to a secluded area where the men raped and subjected the women to other sexual indignities before releasing them. There was testimony that the girls immediately reported the rape and appeared to be upset and hysterical at the time. A medical examination revealed a slight bruising of Ms. Smith's abdomen, somewhat supporting her account of a struggle. Defendants admitted that they had engaged in sexual intercourse with the girls, but testified that it was fully consensual, with the girls taking much of the initiative in the sexual activity and Ms. Strong even volunteering to take over for Ms. Smith when she had trouble performing oral sex on Hudlow. The jury believed the victims' version.

The trial court conducted a pretrial hearing pursuant to RCW 9.79.150(3):[2]

---

[1] At trial it developed the women were known locally as Sunshine and Moonshine.

[2] The statute was recodified as RCW 9A.44.020(3) after trial of this case.

(3) In any prosecution for the crime of rape or for an attempt to commit, or an assault with an intent to commit any such crime evidence of the victim's past sexual behavior including but not limited to the victim's marital behavior, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is not admissible if offered to attack the credibility of the victim and is admissible on the issue of consent only pursuant to the following procedure:

(a) A written pretrial motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the past sexual behavior of the victim proposed to be presented and its relevancy on the issue of the consent of the victim.

(b) The written motion shall be accompanied by an affidavit or affidavits in which the offer of proof shall be stated.

(c) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and the hearing shall be closed except to the necessary witnesses, the defendant, counsel, and those who have a direct interest in the case or in the work of the court.

(d) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered by the defendant regarding the past sexual behavior of the victim is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant; the court shall make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.

One Harry Proctor, a sailor stationed in Bremerton, who shared a house with six other sailors, testified he knew the victims; had engaged in sexual relations with them on several recent occasions, including episodes of "group sex"; had seen both of them enjoying and, indeed, initiating sex-

ual activity with at least two of his roommates; and had heard they were so engaged with many other sailors. Proctor said also that on one occasion Strong and Smith went outside clad only in bath towels and "flashed" a group of sailors walking nearby. Furthermore, he and his roommates formed a rating system in which the two girls were ranked on their performance in oral–genital sex, with Strong regarded as Smith's tutor in this regard. He characterized their reputations as being that of "loose" women and "whores." Proctor's testimony was potentially admissible under the statute as being relevant to the defense of consent. RCW 9.79.150(3); see State v. Blum, 17 Wn. App. 37, 46, 561 P.2d 226 (1977).

The court ruled that Proctor's testimony was relevant on the issue of the victims' consent but that the probative value of the evidence was outweighed by its potentially prejudicial effect on the jury, and the evidence was excluded. In so ruling, the judge stated he was considering prejudice both to the victims and the State. Defendants argue that the court abused the discretion conferred by the statute when it considered possible prejudice to both the State and victims, and that by denying them the right to call Proctor and to cross–examine Strong and Smith on their past sexual behavior, the court contravened defendants' Sixth Amendment rights to call witnesses and present evidence on their own behalf and to confront witnesses against them.

■ We recognize the constitutional interest at stake in this context, in which a defendant's right of confrontation and compulsory process is balanced against the competing state interest involved. See Davis v. Alaska, 415 U.S. 308, 319–20, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974); Chambers v. Mississippi, 410 U.S. 284, 295, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973); State v. Harris, 91 Wn.2d 145, 588 P.2d 720 (1978); State v. Boast, 87 Wn.2d 447, 553 P.2d 1322 (1976); Tanford & Bocchino, Rape Victim Shield Laws and the Sixth Amendment, 128 U. Pa. L. Rev. 544, 560–66 (1980). Here, of course, the competing state interest is that

reflected in the statutory policy of encouraging rape victims to come forth and testify against their attackers. *See State v. Cosden,* 18 Wn. App. 213, 218, 568 P.2d 802 (1977); 52 Wash. L. Rev. 1011, 1015–16 (1977). We need not decide this appeal specifically on Sixth Amendment constitutional grounds, however, because the case can be disposed of on another basis. *State v. Claborn,* 95 Wn.2d 629, 632, 628 P.2d 467 (1981).

█ We believe the trial court abused its discretion in holding that the probative value of Proctor's proffered testimony on the victims' past sexual behavior and "general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards" was outweighed by the likelihood of undue prejudice. The admissibility of such evidence is within the sound discretion of the trial court upon consideration of such factors as relevance, prejudice, and substantial justice, as we stated in *Blum,* 17 Wn. App. at 46; *see* Tanford & Bocchino, 128 U. Pa. L. Rev. at 566–80. *But see* Westen, *Compulsory Process II,* 74 Mich. L. Rev. 192, 205–13 (1975) (arguing that the compulsory process clause of the Sixth Amendment prohibits discretion to exclude relevant evidence when the less drastic alternative of cautionary jury instructions is available). We repeated in *Blum* what we first observed in *State v. Geer,* 13 Wn. App. 71, 74, 533 P.2d 389 (1975), *i.e.,* that exceptional cases may arise in which evidence of the victim's reputation for chastity may be relevant and admissible on the issue of consent of the victim. RCW 9.79.150(3) codifies this possibility. *Cosden,* 18 Wn. App. at 218.

This is that exceptional case. The defense in this case was consent, pure and simple. Defendants offered to prove the relevance of the Proctor testimony, as required by the statute, by asserting that the sexual activity was consensual in that

> they picked these young ladies up and they offered them a ride, they offered them alcoholic beverages, the girls suggested where they were to drive, they drove out there, eventually parked, that alcohol was consumed, that

necking took place and that the sexual act alleged to have occurred did in fact occur.

Defendants then argued the relevance to their defense of consent in these terms:

Admitting the general reputation of the alleged victims for promiscuity, nonchastity and sexual mores contrary to community standards is certainly relevant to this defense, but would be inadequate. The fact that it was the habit of these girls to engage in sexual relations with those with whom they came into contact is probative of the fact that they did so on the night in question. The high number of similar acts and occurrences close in time to the alleged crime is probative that they engaged in the activity on the night in question voluntarily. The fact that [Ellen Strong] had coached [Tammy Smith] in the manner in which to best perform oral–genital sex is probative of the fact that when [Tammy Smith] became ill, [Ellen Strong] volunteered to take over showing her how it was done and complete the act. The fact that these girls eagerly participated in group sex at HARRY PROCTOR's residence is probative of the fact that they would voluntarily switch places in the car so that Defendant HUDLOW could have sex with both women. The fact that these girls engaged in at least one act of prostitution and laughed about it is probative of the fact that they were giving sexual favors in exchange for as miniscule consideration as the ride and alcohol offered by the defendants.

Although the trial judge agreed the evidence was relevant, he excluded it because he found it would have a prejudicial effect upon both the State and the complaining witnesses.

■ We believe that, once having determined the evidence was relevant to defendants' defense, the court should not have considered the prejudicial effect upon the complaining witnesses. Rather, the court's concern should have been limited to whether evidence of the victims' lifestyle would so distract the jury that their character became the central issue, rather than the guilt or innocence of the defendants. Conceding that the purpose of rape victim shield legislation is to encourage prosecution by insulating victims from embarrassing revelations of sexual reputation

and past acts, *because such evidence usually has little or no relevance on either credibility or the consent issue,* that purpose was achieved by the very fact of enactment. The statute not only prohibits the use of such evidence for general impeachment, but also creates a procedure for determining relevance and admissibility in advance of trial. *State v. Blum, supra.* There is, however, nothing in the statute purporting to constrain or restrict the trial judge in his application of accepted legal principles, definitions, and precedent when determining admissibility. Thus the trial judge must look to the judicially accepted and time honored meanings given to such terms as "relevant," "prejudicial" and "substantial justice." As noted by Tanford & Bocchino, 128 U. Pa. L. Rev. at 569–70:

> Traditional evidence law recognizes that otherwise relevant evidence may be inadmissible because it would have the effect of disrupting the trial or sidetracking the search for truth. . . .
>
> The ground most frequently put forth in support of a blanket rule excluding sexual history evidence is . . . that such evidence is "prejudicial" and that this effect outweighs its slight probative value. The issue is not whether evidence is prejudicial in the sense that it is detrimental to someone involved in the trial. Rather, the question is whether the evidence will arouse the jury's emotions of prejudice, hostility, or sympathy. Arguments that sexual history evidence is inadmissible because of its prejudicial impact on the rape victim miss the point. Adverse psychological effects suffered by crime victims, although regrettable, are not grounds for excluding probative evidence.

(Footnotes omitted.)

We agree with the Tanford and Bocchino rationale. The trial judge should not have considered the possible adverse effect upon the women of the relevant evidence sought to be elicited.[3] Further, we believe he gave too much weight in

---

[3]Both *State v. Kalamarski,* 27 Wn. App. 787, 789, 620 P.2d 1017 (1980), and *State v. Williams,* 18 Wn. App. 398, 405, 569 P.2d 1190 (1977), appear to consider prejudice to the victim. In neither of these cases, however, was the issue of prejudice presented to the court in the context in which it is presented to us. Thus, we

this case to the prejudicial effect of such evidence upon the jury and too little to defendants' right to a fair trial.

Defendants sought to present evidence of sexual promiscuity as a character trait relevant to the defense of consent. This was pertinent reputation evidence of a kind that would be admissible in a trial for any other offense in which character is in issue. ER 404(a)(2) ("Evidence of a pertinent trait of character of the victim of the crime offered by an accused" is admissible.);[4] E. Cleary, *McCormick on Evidence* § 193 (2d ed. Supp. 1978); Tanford & Bocchino, 128 U. Pa. L. Rev. at 580–81. Proctor's testimony was critical to the defense. Defendants' story—about picking up two female hitchhikers who, although strangers, within a few minutes were suggesting a secluded place to go and then began engaging freely in and even initiating different sexual acts—was farfetched indeed without the supporting testimony of Proctor to the effect that Ms. Strong and Ms. Smith lived their lives in a manner that was fully consistent with that story, however unlikely.[5]

The legislature in RCW 9.79.150(3)(d) (now RCW 9A.44-.020(3)) has determined that once the evidence of a rape victim's reputation or specific sexual activities is found to be relevant to the issue of her consent, the trial court *should not exclude* the evidence unless the relevancy "is *substantially* outweighed by the probability that its admission will create a *substantial* danger of undue prejudice".

---

do not believe our present resolution is contrary to any prior decision of this court on this point.

[4]Under ER 402, a specific statute such as RCW 9.79.150(3) takes precedence over ER 404 on the admissibility of relevant character evidence.

[5]In fact, the deputy prosecutor pursued a line of questioning intended to cast doubt on defendants' account of consent when he asked Harper on cross-examination:

Q. I see. Is it your testimony that you knew these girls ten minutes and you invited yourselves to their house, or you asked to go to their house. They said no and they immediately directed you to an area in Gorst where they wanted to have sex?

A. Right.

(Italics ours.) And in the final analysis, relevant evidence should not be excluded if to do so will deny a defendant substantial justice. If ever a case is to arise in which the prejudice does not "substantially" outweigh the probative value of the evidence of the victim's promiscuous reputation and activities, this is it. The proffered evidence was so obviously relevant and fundamental to the defense of consent that the possibility of prejudice must fall before defendants' right to present exculpatory evidence to the jury, as properly instructed on the issue. The trial court's ruling simply eviscerated the defense, depriving it of the only available corroboration for the unlikely story of consensual intercourse with two young women who, as far as the jury knew, were sexually virtuous.[6] Although we base our decision on the trial court's abuse of discretion rather than specifically on the Sixth Amendment, we are aware that "grave constitutional overtones" lie behind the balancing of interests in this area. Westen, 47 Mich. L. Rev. at 213; *State v. Kalamarski*, 27 Wn. App. 787, 620 P.2d 1017 (1980). *See also* Tanford & Bocchino, 128 U. Pa. L. Rev. at 559 ("Because the ability of the accused to present testimony is grounded in a constitutional right, a federal con-

---

[6]RCW 9.79.150(4) permits a defendant in certain circumstances to cross-examine the victim as to past sexual behavior if the State elicits favorable evidence on direct. As noted by Tanford & Bocchino, 128 U. Pa. L. Rev. at 584 n.191:

A more difficult case is one in which the complainant gives the impression of chastity without testifying to it directly. She might dress conservatively, act embarrassed when describing the rape, or talk about her family, P.T.A. membership, or church activities. Because most jurisdictions require the jury to consider the demeanor of witnesses in judging their credibility, one can argue persuasively that the accused should be allowed to offer evidence that demonstrates the inaccuracy of such demeanor.

(Citation omitted.)

The instant case is a good example of the type envisioned by Tanford and Bocchino. On the first day of trial one of the women wore a blouse on which was printed "A Woman's Day Is Never Done." The prosecuting attorney initiated her testimony by having her read this to the jury. This same victim broke down and cried when testifying about matters sexual. Both women appeared to struggle with contemporary sexual terminology in describing the night's activities. Fundamental fairness would seem to dictate that evidence belying or casting doubt on the accuracy of this demeanor should be admitted.

stitutional standard applies.") (footnote omitted); *Davis v. Alaska, supra.* Thus, any interest the complaining witnesses had in having their past sexual experiences remain unpublished, and the possibility that the jury would be distracted from its central task, are problems that must be endured when the probative value of the evidence to the defense is as great as here.

Our resolution of the rape victims' shield issue disposes of this appeal and obviates any need to discuss the remaining issues, *i.e.,* whether any of defendants' assault or kidnapping convictions merged into their rape convictions, and whether the State properly proved the validity of the convictions used to support Hudlow's habitual criminal sentence. Should these issues recur in a new trial, on the former issue the court can obtain guidance from *State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979), and *State v. Peyton,* 29 Wn. App. 701, 630 P.2d 1362 (1981). The latter issue will turn on *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980), as construed by subsequent decisions.

The convictions are reversed, the sentences vacated and the matter is remanded for a new trial.

PEARSON and PETRICH, JJ., concur.

Reconsideration denied December 3, 1981.

Review granted by Supreme Court February 5, 1982.