[No. 4148–4–III.   Division Three.   May 6, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. BARRY BOYD WILMOTH, *Appellant.*

*Michael Everett* and *Kimbrough & Everett,* for appellant.

*Curtis Ludwig, Prosecuting Attorney,* and *William A. Bartlett, Deputy,* for respondent.

Munson, J.—Defendant Barry Wilmoth appeals his conviction of first degree rape.

On the evening of April 17, 1979, 18-year-old Natalie, upset by a family argument, left home and walked several blocks to a phone booth at a nearby store. There, she met a stranger, the defendant Barry Wilmoth, who offered to drive her back to a friend's house. Stopping en route, she and the defendant engaged in sexual intercourse in his pickup truck.

Though Natalie testified the acts were in response to threats by the defendant, the defense was consent. Wilmoth testified he was carrying a pistol, a rifle and a box of shells in his truck at the time. Prior to trial, he moved pursuant to RCW 9.79.150[1] to admit evidence of Natalie's prior sexual conduct and general character. Specifically, he sought to

---

[1] RCW 9.79.150 was recodified as RCW 9A.44.020 in 1979, which provides in relevant part:

"(3) In any prosecution for the crime of rape or for an attempt to commit, or an assault with an intent to commit any such crime evidence of the victim's past sexual behavior including but not limited to the victim's marital behavior, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is not admissible if offered to attack the credibility of the victim and is admissible on the issue of consent only pursuant to the following procedure:

"(a) A written pretrial motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the past sexual behavior of the victim proposed to be presented and its relevancy on the issue of the consent of the victim.

"(b) The written motion shall be accompanied by an affidavit or affidavits in which the offer of proof shall be stated.

"(c) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and the hearing shall be closed except to the necessary witnesses, the defendant, counsel, and those who have a direct interest in the case or in the work of the court.

"(d) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered by the defendant regarding the past sexual behavior of the victim is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant; the court shall make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court."

introduce evidence that Natalie had sexual relations over a period of time with two other men, arguing these experiences indicated a propensity to consent. The trial court ruled the circumstances of her leaving home might be relevant to her state of mind, but would not allow the defense to probe too deeply nor allow evidence of her prior sexual history.

First, Wilmoth contends the trial court erred in employing RCW 9.79.150 to prevent him from introducing evidence of prior sexual conduct. We have previously held that statute to be constitutional. *State v. Kalamarski,* 27 Wn. App. 787, 620 P.2d 1017 (1980). Division Two of this court in *State v. Hudlow,* 30 Wn. App. 503, 635 P.2d 1096 (1981), *review granted,* 97 Wn.2d 1001 (1982), allowed evidence of past sexual conduct to be admitted in a factual context far removed from that presented in this case. Here, the trial court in its discretion found the complainant's past conduct had no bearing on the probability of consent under the circumstances presented. Because there was no evidence the victim engaged in random, careless sex following transient encounters, we agree with the trial court's conclusion.

[2] Second, Wilmoth sought to introduce general character evidence of the victim pursuant to ER 404(a)(2).[2] Matters pertaining to prior sexual history are controlled by RCW 9A.44.020, as discussed above. *See* Comment, ER 404, 91 Wn.2d 1133 (1978). The court allowed a certain amount of inquiry into the complainant's state of mind the night of the rape. The testimony allowed was admissible to attempt

---

[2]ER 404(a)(2) provides:

"(a) **Character Evidence Generally.** Evidence of a person's character or a trait of his character is *not admissible* for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

". . .

"(2) *Character of Victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor; . . ." (Italics ours.)

to demonstrate the complainant's distraught state of mind and establish the possibility of mistake or bias in her testimony. Wilmoth has failed to establish what objective he would have obtained had he been allowed to pursue these issues further. As noted, details of complainant's sexual history were not relevant to the issue of consent. Since the complainant's distraught state of mind was established, we see little that could have been accomplished by a further pursuit of these questions. Such line drawing lies within the discretion of the trial court in its determination of the relevance of evidence. *State v. Schimmelpfennig*, 92 Wn.2d 95, 98, 594 P.2d 442 (1979). We find no error.

■ Third, Wilmoth claims the trial court erred in denying his motion for a mistrial because of juror misconduct. During a recess, a juror offered some headache medicine to the complaining witness. The trial court decided the conversation was innocuous; Wilmoth argued that it tended to create sympathy in the mind of the juror toward the complaining witness. Communication between a juror and a complaining witness is error, but may be harmless. *State v. Saraceno*, 23 Wn. App. 473, 596 P.2d 297 (1979).

■■ The defendant must establish prejudice for error to exist. In *State v. Vasquez*, 130 Ariz. 103, 107, 634 P.2d 391, 395 (1981), the court stated:

> "We are only justified in disturbing the verdict of guilty on account of the alleged misconduct of a juror when it is shown that such misconduct was prejudicial to the rights of the defendant, or when such a state of facts is shown that it may fairly be presumed therefrom that the defendant's rights were prejudiced." *State v. Adams*, 27 Ariz. App. 389, 392, 555 P.2d 358, 361 (1976).

Whether such prejudice exists is a matter of fact within the discretion of the trial court. *State v. Young*, 89 Wn.2d 613, 630, 574 P.2d 1171, *cert. denied*, 439 U.S. 870, 58 L. Ed. 2d 182, 99 S. Ct. 200 (1978). The court found no prejudice. The court also admonished the jury not to be influenced by sympathy or prejudice, an admonition they presumptively

followed. *State v. Kroll,* 87 Wn.2d 829, 835, 558 P.2d 173 (1976). *See also* Annot., *Prejudicial Effect, in Criminal Case, of Communications Between Witnesses and Jurors,* 9 A.L.R.3d 1275 (1966). We find no abuse of discretion.

Fourth, defendant argues a prosecutor's comment on his postarrest silence was prejudicial pursuant to *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976); *State v. Cosden,* 18 Wn. App. 213, 220, 568 P.2d 802 (1977), *cert. denied,* 439 U.S. 823, 58 L. Ed. 2d 115, 99 S. Ct. 90 (1978). On direct examination, Wilmoth said he turned himself in voluntarily. The following occurred:

Q You voluntarily came back. You wanted to get this cleared up?
A Yes.
Q You refused to give a statement of your side of the story to the—
A No, I didn't.

At this point, an objection was made and sustained. Unequivocal postarrest assertion of the Fifth Amendment right to remain silent may not be used to impeach a defendant's testimony at trial because it is "insolubly ambiguous" and does not necessarily tend to show a fabricated defense. *Doyle v. Ohio, supra; State v. Modica,* 18 Wn. App. 467, 569 P.2d 1161 (1977); *State v. Upton,* 16 Wn. App. 195, 198–99, 556 P.2d 239 (1976); *but see State v. Cosden, supra* (distinguishing *Upton* and *Modica*).

■ The prosecutor's question, and the defendant's ambiguous answer, were error. However, they constituted a passing comment rather than a full exploration of the question as occurred in *State v. Vargas,* 25 Wn. App. 809, 812, 610 P.2d 1 (1980). If the comment is error, it is harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Fricks,* 91 Wn.2d 391, 396, 588 P.2d 1328 (1979). In reviewing the testimony and the court's precautionary instruction, we do not believe the jury was influenced by the inquiry.

Accordingly, we affirm the conviction on all counts.

GREEN, J., concurs.

ROE, A.C.J. (dissenting)—The majority admits that there was error on the part of the prosecutor to state to the defendant in a question, "You refused to give a statement of your side of the story to the—", but dismisses it as a "passing comment". It deserves better treatment even though the defendant may well be guilty of the crime charged.

Here, unlike *State v. Cosden,* 18 Wn. App. 213, 568 P.2d 802 (1977), the defendant did not volunteer a defense to the police and then offer an inconsistent one at trial. Rather, the record suggests that, on advice of counsel, he unequivocally exercised his right to remain silent after the arrest and *Miranda* warnings were given.

Similarly, in *State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979), a burglary case, the prosecutor elicited testimony from both arresting officers concerning the fact that defendant made no statement to them after he was arrested and advised of his *Miranda* rights. In his closing argument, the prosecutor again drew attention to defendant's silence by commenting that defendant had offered no statement when placed under arrest. The court held defendant's right to due process was violated, stating at page 395:

> This conduct penalized defendant for exercising his constitutional right to remain silent by implying that his silence was consistent with guilt and inconsistent with the exculpating story given at trial.

*Fricks* further held the constitutional error was prejudicial since defendant testified on his own behalf and therefore his credibility was at issue. Also, his exculpating story was plausible and, while the State had substantial evidence against him, its case was not overwhelming.

Likewise, here, defendant's credibility was at issue once having taken the stand. Although the prosecution may seek to impeach defendant's credibility, it may not sidestep the

Fifth Amendment to do so. Here, unlike *State v. Vargas,* 25 Wn. App. 809, 812, 610 P.2d 1 (1980), the defendant did not specifically testify that he cooperated fully with the authorities and gave a statement to the police. He merely stated he turned himself in to get things cleared up. Thus, the *Vargas* rule that once defendant brings his cooperation with the police into question, he opens the door to full development of that subject, is not applicable.

This case is factually closer to *State v. Modica,* 18 Wn. App. 467, 569 P.2d 1161 (1977). There, defendant turned himself in to police after learning his neighbor died from a gunshot wound. Defendant was advised of his constitutional rights and waived them in the presence of his attorney; whereupon, a written statement was taken. At trial, the interrogating detective who took the statement and the defendant were both examined concerning defendant's refusal to tell the detective whether or not he had a gun when he went to the victim's apartment. During his closing argument the prosecutor further commented on defendant's refusal to answer the question. Although defense counsel did not object at trial to these references to defendant's postarrest assertion of the right to remain silent, he assigned error to them on appeal. In a per curiam decision, the court held the repeated use by the prosecutor of the defendant's refusal to answer questions about the gun unconstitutionally eroded his claim of self–defense, stating at pages 476–77:

> The defendant's silence was "insolubly ambiguous". The reasoning in *Doyle v. Ohio,* [426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976)] is especially applicable, for in addition to the inference that the defendant was exercising his rights under the Fifth Amendment in refusing to answer the policeman's question, there is evidence from which inferences could be drawn that the defendant never refused to answer any question of the detective, and at trial may have been answering a different question than that asked by the prosecutor. We hold that the State's use of this "silence" to impeach the defendant's "credibility" was prejudicial error requiring a new trial.

The same reasoning applies here. I would reverse the trial court's denial of a mistrial.

Reconsideration denied June 8, 1982.

Review denied by Supreme Court September 24, 1982.