IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————

JAMIE CLEM,
*Plaintiff/Appellant/Cross-Appellee,*

*v.*

PINAL COUNTY; PINAL COUNTY SHERIFF MARK LAMB,
*Defendants/Appellees/Cross-Appellants.*

No. 2 CA-CV 2024-0305
Filed October 30, 2025

———————————

Appeal from the Superior Court in Pinal County
No. S1100CV201600707
The Honorable Joseph R. Georgini, Judge

**AFFIRMED**

———————————

COUNSEL

Ahwatukee Legal Office P.C., Phoenix
By David L. Abney

and

Robbins Curtin Millea & Showalter LLC, Phoenix
By Joel B. Robbins and Jesse M. Showalter
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Jellison Law Offices PLLC, Scottsdale
By James M. Jellison
*Counsel for Defendants/Appellees/Cross-Appellants*

---

## OPINION

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Eppich and Judge Vásquez concurred.

---

S K L A R, Judge:

¶1        In this wrongful-death case, the trial court excused a potentially biased juror during trial.  This case requires us to address whether it also should have declared a mistrial.  The issue arises from Jamie Clem's unsuccessful action against the Pinal County Sheriff, who she alleged was responsible for her son's death at the Pinal County Adult Detention Facility.  The excused juror was a political supporter of the sheriff.  He was also friends with the sheriff's in-court representative.

¶2        We conclude that a mistrial was not required.  The juror's potential bias supplied the trial court with ample reason to excuse him.  For a mistrial, though, our law requires prejudice.  Clem has demonstrated none.  We also reject Clem's argument that the court was required to preclude expert testimony for an asserted disclosure violation.  And we reject the defendants' argument on cross-appeal concerning a sanction under Rule 68(g) of the Arizona Rules of Civil Procedure.  We therefore affirm the judgment.

## BACKGROUND

¶3        In April 2015, Skyler Clem died of a drug overdose.  He had been in custody at the Pinal County Adult Detention Facility when he was found nonresponsive in a holding cell.  His mother and statutory beneficiary, Jamie Clem, filed this wrongful-death lawsuit in April 2016.  The initial defendants were the county and its sheriff.

¶4        Years of litigation followed, including a prior appeal.  The case proceeded to a ten-day jury trial in January 2024.  On the first day, the parties stipulated to the county's dismissal, leaving the sheriff as the sole defendant.  The jury returned a verdict in the sheriff's favor.

¶5        The trial court entered judgment in favor of the county and sheriff.  Under Rule 68(g), the court awarded the defendants double their taxable costs as well as $30,000 for what it deemed their reasonable

expert-witness fees.  Clem appealed.  The defendants cross-appealed because the award of expert fees was less than half of their request.

## JUROR DISQUALIFICATION AND MISTRIAL

¶6         Clem makes two arguments concerning the juror who had supported the sheriff and was friends with his in-court representative.  She first argues that the trial court erred by empaneling the juror.  Second, she argues that, although that juror was excused after additional information came to light, the court erred by denying her request for a mistrial.  We review both issues for an abuse of discretion.  *State v. Johnson*, 247 Ariz. 166, ¶ 106 (2019) ("We review the trial court's denial of a motion to strike a juror for an abuse of discretion."); *Porterie v. Peters*, 111 Ariz. 452, 458 (1975) ("We cannot say from the record that the action taken by the trial court in failing to grant a mistrial was an abuse of discretion.").

### I.    The trial court empanels juror six over a for-cause challenge

¶7         At issue is juror six, a retired corrections officer.  During voir dire, juror six described his relationship with then-Sheriff Mark Lamb's in-court representative, Lt. Ross Teeple.  At the time, Lamb was campaigning for the United States Senate, and Teeple was campaigning to replace Lamb as sheriff.

¶8         Juror six explained, "I've worked with Ross Teeple at the prison, the state prison, and I've been retired almost ten years now.  Just friends."  He explained that he had seen Teeple "here and there" during Teeple's campaign for sheriff.  However, he agreed that the friendship would not "persuade [him] in any way to favor one side over the other."

¶9         Juror six did not respond when jurors were asked if any of them had "been in pictures" endorsing Lamb or Teeple.  But later in the day, Clem's counsel found a "public Facebook post that juror number six had appeared with and spoken at events with Sheriff Lamb."  The photo involved a "reposting from Teeple for the People, which is Lieutenant Teeple's election campaign."

¶10         That prompted follow-up questions from the trial court and counsel.  Juror six explained that he and Teeple were "close friends" who saw each other "[m]aybe every two months or something."  He also stated that he had contributed to Teeple's campaign.  He said that during the earlier questioning, he had forgotten the photo in which he appeared with Teeple.  He explained, "I had a hat on that said 'Teeple for the People' for

his campaign." He also said that, when Lamb had been campaigning for sheriff in 2020, he had supported Lamb at two events. However, he clarified that he was not involved in Lamb's senate campaign.

¶11 Clem challenged juror six for cause. The trial court denied the challenge. It explained in part, "I don't find the nature of the relationships . . . to be of any real significance to disqualify him given what I've been told by both sets of attorneys regarding the involvement of Teeple and Lamb" in the case. The court concluded, "At this point it appears based on his body language, the record, his statements on the record to the court, to the attorneys that he can be fair and impartial."

## II. The trial court denies Clem's motion for mistrial after Clem discovers additional information about the juror's associations with Teeple and Lamb

¶12 Further developments arose on the fifth trial day. A paralegal for Clem's counsel had seen that on juror six's Facebook page "he had posted a[n] endorsement of Mark Lamb and Ross Teeple during this trial." Clem sought a mistrial, arguing, "[T]his post during trial is signaling to Ross Teeple and Mark Lamb, 'I'm still your guy.'"

¶13 Juror six acknowledged reposting a video from the "Teeple for the People" website. He also acknowledged that "it could" look unfair that he had posted support for Teeple and Lamb during trial. But he reiterated that he had no allegiance to Teeple and Lamb "pertaining to this trial." He said, "When I did that, I wasn't even thinking about this case."

¶14 On questioning from the trial court, juror six said he did not recall speaking with the other jurors "about anything involving this case or politics." But, as illustrated by the following colloquy with the court, he had discussed his opinions about Teeple and Lamb with other jurors:

> Q. Okay. So but have you—have you voiced any of your opinions involving any of the people, including Lieutenant Teeple or Sheriff Lamb, to any of your colleagues, your fellow jurors?
>
> A. Yes, we have discussions.

Q.      Okay.  Have you—have you told them that you're friends with Sheriff Lamb and/or Lieutenant Teeple?

A.      Yes, they know.

Q.      You used the term "friend" versus "supporter," right?    Is that—you consider yourself friends?

A.      Yes, with Lieutenant Teeple.

The juror further explained on questioning from defense counsel that he had seen Teeple within about a month at campaign events, but "[m]onths, maybe a year" excluding campaign events.  And he reaffirmed that he believed he could be "fair and impartial to both sides in the case."

¶15      The trial court concluded, "We have an appearance of impropriety at this point."   It explained that although juror six had assuaged any concerns that arose during voir dire on the first day, the court had become "more concerned—significantly more concerned" and would therefore remove the juror.

¶16      However, the trial court denied Clem's motion for mistrial without explanation.  After the jury rendered its verdict, Clem renewed the motion, which the court again denied.  At no point after the verdict did Clem seek to renew the motion or supplement the record with affidavits from other jurors about their discussions with juror six.  Nor does the record contain evidence about the content of those discussions, except as described above.

## III. The empanelment of juror six was not reversible error in the absence of prejudice

¶17      Clem first argues that the trial court abused its discretion and committed "reversible error" by empaneling juror six.  At oral argument, she characterized juror six's empanelment as having resulted in an "appearance of impropriety" and a "tainted" trial requiring reversal even in the absence of prejudice.

¶18      Under A.R.S. § 21-211(4), a person who is "biased or prejudiced in favor of or against either of the parties" is disqualified from jury service.  Juror six's lengthy friendship and public political support for Teeple—the sheriff's in-court representative at trial—strongly suggests a

5

bias, especially given his public support for Lamb as well. This is true despite the juror's repeated assurances that he could put his friendship aside. *See State v. Hill*, 174 Ariz. 313, 319 (1993) ("[T]he impartiality of a potential juror who is personally acquainted with individuals involved in the prosecution is necessarily suspect, and the trial judge must take care to be certain that the juror can and will be fair and impartial."). Thus, Clem makes a strong argument that juror six should not have been empaneled and that his empanelment created an appearance of impropriety.

¶19        It does not follow, however, that any error in empaneling juror six was reversible in the absence of prejudice. In civil cases, a prejudice requirement derives from our constitution, case law, and procedural rules. Ariz. Const. art. VI, § 27 ("No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."); *Creach v. Angulo*, 189 Ariz. 212, 214-15 (1997); *see also* Ariz. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

¶20        Verdicts may typically be reversed without prejudice only in the narrow context of structural error. *See State v. Ring*, 204 Ariz. 534, ¶¶ 45-46 (2003) (listing types of structural error). We have found no case law, though, extending structural error beyond the criminal context. *See id.* ¶ 46. And even if structural error applies in this civil case, our case law suggests that it would not include the empanelment of a biased juror who was later excused, before deliberations began. *Cf. State v. Eddington*, 226 Ariz. 72, ¶¶ 12, 15, 18 (App. 2010) (concluding that error in declining to strike juror who was "interested" in the case under Section 21-211 was subject to harmless-error review (quoting § 21-211(2))), *aff'd*, 228 Ariz. 361 (2011). We decline to reach such a conclusion in the first instance, especially because, as we discuss below, any impropriety in empaneling juror six was remedied by his excusal.

¶21        Absent structural error, Clem does not identify any remedy for the empanelment of juror six that the trial court failed to provide. The only other plausible remedy is a mistrial. *Cf. State v. Cruz*, 218 Ariz. 149, ¶¶ 69-82, 86 (2008) (finding no abuse of discretion in denial of mistrial where jurors had been excused after misapprehending admonition and making incorrect statements of law to other jurors). And Clem is already challenging the court's denial of a mistrial based on the totality of juror six's statements, not just those he made before being empaneled. Thus, we need not further address juror six's empanelment.

## IV. The trial court did not abuse its discretion in denying Clem's motion for mistrial

**¶22**　　　　A mistrial is an "extreme remedy." *State v. Rios*, 258 Ariz. 175, ¶ 13 (App. 2024) (quoting *State v. Kleinman*, 250 Ariz. 362, ¶ 12 (App. 2020)). It is appropriate only where some occurrence has made it "apparent to the court" that "one of the parties cannot have a fair trial, or where further proceedings would be productive of great hardship or manifest injustice." *Id.* (quoting *Kleinman*, 250 Ariz. 362, ¶ 12). Before declaring a mistrial, the trial court must attempt to determine whether feasible alternatives exist. *State v. Woods*, 237 Ariz. 214, ¶ 15 (App. 2015).

### A. Standard for mistrial based on improper juror communications

**¶23**　　　　Neither the parties' briefing nor our research has yielded any cases in which a party sought a mistrial under circumstances similar to those here. Our case law recognizes that, as a general matter, a mistrial can be appropriate where jurors engage in improper communications. *See, e.g.*, *State v. Miller*, 178 Ariz. 555, 557, 560 (1994) (holding evidentiary hearing or mistrial necessary after alternate juror left note on juror's car reading "He's guilty" or "My vote is guilty"). But such an outcome is proper only where the offending communications result in prejudice. *State v. Vasquez*, 130 Ariz. 103, 105 (1981); *cf. Perez ex rel. Perez v. Cmty. Hosp. of Chandler, Inc.*, 187 Ariz. 355, 358 (1997) (requiring prejudice for improper communication to be basis for new trial).

**¶24**　　　　As our supreme court recognized in *American Power Products, Inc. v. CSK Auto, Inc.*, the prejudice inquiry typically requires courts to "determine whether the communication would likely prejudice a hypothetical average juror." 239 Ariz. 151, ¶ 17 (2016). This objective standard requires the court to consider "whether the communication related to the evidence presented, the applicable law, or the ultimate issue in the case, or whether it clearly interfered with the jury's decision-making process." *Id.* ¶ 18.

**¶25**　　　　But in *American Power Products*, the court also recognized that some errors make a prejudice determination difficult. *Id.* ¶ 16. In part, this is because Rule 606(b)(1) of the Arizona Rules of Evidence limits the scope of inquiries into a verdict's validity by prohibiting jurors from testifying about their deliberations. That rule reads:

> During an inquiry into the validity of a verdict in a civil case, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.

The rule contains two relevant exceptions. First, jurors may testify about whether "extraneous prejudicial information was improperly brought to the jury's attention." Ariz. R. Evid. 606(b)(2)(A). Second, they may testify about whether "an outside influence was improperly brought to bear on any juror." Ariz. R. Evid. 606(b)(2)(B). Taken together, the rule and its exceptions permit jurors to be questioned about outside information they received, but not about its effect on the deliberations.

¶26 Given Rule 606(b), the court concluded in *American Power Products* that prejudice must be presumed in certain cases. 239 Ariz. 151, ¶ 17. Specifically, where an improper juror communication "creates a structural defect in the trial that deprives a litigant of an essential right, the trial judge must conclusively presume prejudice." *Id.*; *see also State v. Vasquez*, 130 Ariz. at 105 (requiring mistrial where "such a state of facts is shown that it may fairly be presumed . . . that the defendant's rights were prejudiced" (quoting *State v. Adams*, 27 Ariz. App. 389, 392 (1976))).

### B. Clem has not demonstrated prejudice under either applicable standard

¶27 In arguing that a mistrial was required, Clem asserts that juror six "objectively appeared biased and prejudiced in favor of Defendant Sheriff and his official, in-court, designated representative." As we have explained, whether a juror is "biased or prejudiced" is undoubtedly relevant to that juror's qualifications to serve. § 21-211(4). But Clem has pointed to no case suggesting that a mistrial is necessary simply because a biased juror was empaneled and remained on the jury for some portion of the trial, even where the empanelment raised an appearance of impropriety. Nor have we found any such case, let alone one that required a mistrial where that juror was excused before deliberations began.

¶28 We are unpersuaded that we should impose such a standard here. Instead, we conclude that the relevant inquiries are whether any improper communications occurred, and if so, whether they satisfied the prejudice standard articulated in *American Power Products*. Absent

prejudice from one of juror six's communications, a mistrial was not necessary.

**¶29** Clem does not frame her argument with these inquiries. But she nevertheless asserts that she was prejudiced by juror six's discussions with other jurors about his opinions of Teeple and Lamb, as well as the jury's awareness of his friendship with Teeple. The prejudice was heightened, in her view, by Arizona Rule of Civil Procedure 40(h)(1)(B), which allows civil jurors to discuss the evidence even before deliberations begin, under certain conditions.

**¶30** Clem acknowledges, however, that the record contains "only scraps and hints about what Juror No. 6 told the other jurors." Indeed, the record is devoid of any reference to the content of assertedly improper communications. To excuse this lack of evidence, she relies on Arizona Rule of Evidence 606(b). But Rule 606(b) was not applicable when juror six was questioned and excused on the fifth trial day. That rule concerns the permissible scope of inquiries into the validity of a verdict. Likewise, Rule 606(b)'s prohibition on juror testimony concerns their deliberations, votes, and mental processes. Here, no deliberations or votes had occurred on the fifth day, and the trial court was not inquiring into the validity of a verdict. Its inquiry was more akin to an investigation into juror misconduct, where courts generally have broad discretion. *See State v. Cota*, 229 Ariz. 136, ¶ 74 (2012) ("When a trial court becomes aware of possible juror misconduct, it should 'conduct whatever investigation it deems warranted.'" (quoting *State v. Cook*, 170 Ariz. 40, 55 (1991))).

**¶31** Moreover, even after the trial concluded, Rule 606 did not prevent Clem or the trial court from obtaining at least some information regarding juror six's communications. At a minimum, they could have asked what "extraneous prejudicial information" or "outside influence" had been shared. *See* Ariz. R. Evid. 606(b)(2)(A)–(B); *Brooks v. Zahn*, 170 Ariz. 545, 553 (App. 1991) (describing scope of permissible inquiry in determining whether jury considered extraneous information).

**¶32** Nevertheless, Clem did not obtain affidavits or other information from jurors about this information. *See, e.g.*, *Dunn v. Maras*, 182 Ariz. 412, 419-20 (App. 1995) (discussing affidavits from jurors about extraneous, prejudicial information provided by juror regarding settlement involving separate defendant in medical-malpractice case). Nor did any other jurors comment during trial about juror six's communications with them. We therefore have very limited information about the nature of those communications. To the extent we know about them, they largely

concerned information that was already shared during voir dire—juror six had supported Lamb and Teeple, and he was friends with Teeple. Nothing about this information was prejudicial, especially once juror six was excused.

¶33 Thus, despite having available mechanisms for obtaining them, Clem has not presented any facts that could allow us to conclude that a hypothetical, reasonable juror would have been prejudiced by any improper communications from juror six. Nothing suggests that any such communications concerned the evidence, applicable law, or ultimate issues, or that they interfered with the jury's decision-making. *Am. Power Prods.*, 239 Ariz. 151, ¶ 18.

¶34 We are similarly unpersuaded that we must presume the existence of prejudice, which would require a "structural defect" in the trial. *Id.* ¶ 17. Clem has largely not addressed this issue. At best, she points to the possibility that juror six's friendship with Teeple and support for Lamb influenced the jury's discussions about the evidence before the juror was excused.

¶35 But Clem has not explained how these facts could have deprived her of an essential right. Although the jury could discuss the evidence, it was instructed not to "form final opinions about any fact or about the outcome of the case" until hearing all evidence, argument, and instructions. *See* Ariz. R. Civ. P. 40(h)(1)(B) (requiring court to instruct jurors to "reserve judgment about the action's outcome until deliberations begin"). That did not occur until after juror six was excused. We presume the jury followed the trial court's instructions. *Ahmad v. State*, 245 Ariz. 573, ¶ 10 (App. 2018). As a result, we see no basis for presuming that any improper communications from juror six resulted in a structural defect. It follows that the court did not abuse its discretion in denying Clem's motion for mistrial. Excusing juror six was a sufficient remedy for any impropriety or error in his empanelment.

## STANDARD-OF-CARE EXPERT

¶36 Clem also argues that the trial court improperly allowed a defense expert to testify about jail standards of care even though his report did not use the term "standard of care." In Clem's view, this amounts to a disclosure violation under Rule 37(c)(1) of the Arizona Rules of Civil Procedure. We review for an abuse of discretion whether a trial court properly admitted expert testimony. *Escamilla v. Cuello*, 230 Ariz. 202, ¶ 20 (2012). We apply the same standard to a court's decision to allow untimely

disclosed evidence. *Estate of Brady v. Tempe Life Care Village, Inc.*, 254 Ariz. 122, ¶ 16 (App. 2022).

¶37　　　　At issue is the testimony of Gary DeLand. Clem objected to DeLand's testimony on the ground of a lack of disclosure, but the trial court overruled the objection. DeLand's report is not in our record. But DeLand acknowledged at trial that the report did not use the term "standard of care." It did contain details about standards for intake, supervision, surveillance, security checks, headcounts, and "meal pass-outs." DeLand testified extensively about these issues. And in doing so, he was asked numerous questions, both on direct and cross-examination, about the standard of care. His opinion had also been described in at least one pretrial document as containing standard-of-care opinions.

¶38　　　　Rule 26.1(d) provides detailed requirements for expert reports. Among these is a "complete statement of all opinions the expert will express and the basis and reasons for them." Ariz. R. Civ. P. 26.1(d)(4)(B). If a party fails to timely disclose required material, the trial court must preclude the party from using the information at trial. Ariz. R. Civ. P. 37(c)(1). However, this is not required if the "court specifically finds that such failure caused no prejudice or orders otherwise for good cause." *Id.*

¶39　　　　Here, while the term "standard of care" is legally significant, we are unpersuaded that its omission from the report constitutes a failure to disclose under Rule 26.1. This is especially true given our inability to compare DeLand's report to his testimony. From the record, it appears that his testimony and report covered the same subject matter. Therefore, Clem could not have reasonably been surprised by his testimony, especially given the pretrial document describing him as a standard-of-care expert. *See Reyes v. Town of Gilbert*, 247 Ariz. 151, ¶ 24 (App. 2019) (explaining purpose of disclosure rules is to allow parties to reasonably prepare for trial, and "courts must use a common-sense approach in applying the rules"). Nor has Clem adequately described how the omission prejudiced her. We therefore conclude that the trial court did not abuse its discretion in declining to preclude DeLand's testimony.

## RULE 68 SANCTION

¶40　　　　On cross-appeal, the defendants argue that the trial court improperly reduced a mandatory sanction under Rule 68. The sanction was ordered because the defendants obtained a more favorable verdict at trial than an offer of judgment they had conveyed in June 2016. We review the

court's award of expert fees under Rule 68 for an abuse of discretion. *Flood Control Dist. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29, ¶ 57 (App. 2012).

¶41            Rule 68 concerns offers of judgment. At issue here is subsection (g), which imposes consequences on a party that rejected an offer and failed to obtain a more favorable judgment. The trial court relied on the 2016 version of Rule 68(g), which was in effect when the offer was made. Under that version, the party that rejected the offer was required to "pay, as a sanction, reasonable expert witness fees and double the taxable costs, as defined in A.R.S. § 12-332, incurred by the offeror after making the offer." The court calculated the sanction at $15,931.67 for taxable costs and $30,000 for reasonable expert fees. The defendants, however, had sought $16,283.72 in taxable costs and $61,827.71 in expert fees.

¶42            The defendants challenge the reduction. They appear to focus primarily on the reduction in expert fees, because they conceded in the trial court that the cost reduction was appropriate. In their view, because Rule 68 made an award mandatory, the court was required to explain its reduction. But Rule 68 does not expressly require the court to do so, and the defendants have identified no other authority that does.

¶43            More generally, trial courts have broad discretion in assessing the reasonableness of expert fees. *Lohmeier v. Hammer*, 214 Ariz. 57, ¶ 18 (App. 2006). And the defendants have cited no authority requiring courts to explain reductions based on unreasonableness. We do not generally require such explanations in determinations of a reasonable attorney fee. *See, e.g.*, *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, ¶ 9 (App. 2007) (providing that attorney-fee award under A.R.S. § 12-341.01 can be affirmed "with a reasonable basis even if the trial court gives no reasons for its decision regarding whether to award fees").

¶44            We see no reason to depart from that practice here. This is especially true because Clem presented significant argument in the trial court that the defendants' experts had kept insufficient time records. We therefore conclude that the court did not abuse its discretion in reducing the expert-witness-fee award.

**DISPOSITION**

¶45            We affirm the judgment of the trial court.