634 P.2d 969

**Ronald Gary EVANS, Petitioner,**

**v.**

**The Honorable Jay M. ABBEY, Judge of the Navajo County Superior Court, sitting in Gila County, State of Arizona; and, Robert Duber, II, Gila County Attorney, real party in interest, Respondents.**

**No. 2 CA–CIV 4043.**

Court of Appeals of Arizona, Division 2.

July 27, 1981.

Rehearing Denied Sept. 4, 1981.

Review Denied Sept. 29, 1981.

Debus & Kazan, Ltd. by Lawrence I. Kazan, Phoenix, for petitioner.

Robert Duber, II, Gila County Atty., Globe, by Catherine M. Hughes, Globe, for real party in interest.

OPINION

BIRDSALL, Judge.

Petitioner brought this special action to challenge the trial court's denial of his motion to dismiss his prosecution on double jeopardy grounds. Since petitioner is without an adequate remedy by means of an appeal, and since we believe the trial court abused its discretion, we assume jurisdiction and grant relief.

Petitioner is accused of first-degree murder and arson of an occupied structure. After four days of trial, the court, *sua sponte*, over petitioner's objection, declared a mistrial. The court then set a date for a second trial after which petitioner filed his motion to dismiss the charges, which was denied.

We must determine if there was manifest necessity for the mistrial. The apparent reason for the court's action was conversation between a witness and a juror. After the evening recess the juror engaged the witness in some conversation about the case. The court learned of the conversation the next morning. The witness was interviewed in chambers in the presence of counsel and on the record. This interview revealed that the witness, a police captain, and the juror, Mr. Martin, were sitting next to each other at a bar. The juror reminded the witness that they were previously acquainted. After this initial exchange, the conversation was reported by the witness as follows:

"Well, I guess you're still a long ways off from proving who did it. And I says: Well, yes, sir. We still have a ways to go yet. And I didn't say anything more.

And he says: Well, that guy's attorney, he tried to—he tried to twist you up there. But I think you handled yourself pretty well on the stand.

And I says: Well, I guess I did. Or something to that effect. From that point on I just—I said: I don't think we should talk any more."

According to the witness, there was no further conversation.

Prior to this in-chambers interview, the court had been presented with another problem. After the evening recess on the third day of trial, petitioner's mother was overheard talking to the petitioner outside the courtroom. The person who reported this incident said that the conversation was something to this effect: "You're going to have to tell your attorney that they're lying. You're going to have to tell them that that's just not the truth". The informant believed there were at least three jurors who could have heard these statements. One of the three was recognized and identified.

With agreement of counsel, the court then examined each juror, individually, in chambers asking if the juror had overheard any conversation about the case in the hallway. No juror admitted overhearing any such conversation. The juror who had discussed the case at the bar with the police captain was not asked about that incident. He was questioned only about whether he had heard any talk about the case in the hallway.

Following this individual examination of each juror the court found no problem with the hallway matter. It then sought ideas from both counsel about the Martin incident. Counsel for the state was equivocal, leaning toward a mistrial. Conversely, counsel for petitioner stated that he "would just as soon not mistry the case and [wanted] to go forward with the trial".

After a recess the court made the following record:

"Based upon the matters that have come to my attention, and feeling that the situation does not permit me to even—I cannot even determine the degree of prejudice. Nor to whom it would be directed.

I find I have no alternative but to declare a mistrial in this matter."

Counsel for petitioner objected to the mistrial. Counsel for the state remained equivocal.

There were thirteen jurors when the mistrial was ordered. The court considered excusing Mr. Martin as if he were the alternate juror and proceeding with the remaining twelve jurors. Although neither party expressed any objection to this procedure, the court did not utilize it. The trial court may properly excuse a juror for cause after evidence has been received. *State v. Evans*, 125 Ariz. 140, 608 P.2d 77 (App. 1980). Neither party is entitled to be tried by any particular jury. *Id.* Nor did the trial court question Mr. Martin to determine whether he had talked to any other jurors, or vice-versa. These were reasonable alternatives.

The decision to declare a mistrial is within the sound discretion of the trial court and is entitled to great deference. However, where that discretion has been abused, we are compelled to hold that jeopardy has attached and that the charges against petitioner must be dismissed. *See United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

The term "manifest necessity" appears first in *United States v. Perez*, 9 Wheat. 579, 6 L.Ed. 165 (1824). There it was held that the inability of the jurors to agree constitutes sufficient reason for mistrial. *Perez* is cited and followed in most reported "double jeopardy" opinions which we have examined. In *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the court stated that if the double jeopardy bar is to be avoided, the prosecution must justify a mistrial declared over the defendant's objection by demonstrating "manifest necessity". *Id.* at 505, 98 S.Ct. at 830.

We find no such manifest necessity here. A mistrial is not warranted when the court had the ability to prevent its necessity. *State ex rel. Dandy v. Thompson*, 148 W.Va. 263, 134 S.E.2d 730 (1964), *cert. den.* 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30 (1964). A second trial would constitute double jeopardy. *State v. Burruell*, 98 Ariz. 37, 401 P.2d 733 (1965).

The authority provided by the state is not persuasive. *United States v. Pridgeon*, 462 F.2d 1094 (5th Cir. 1972) involved misconduct on the part of the defendant's witnesses which caused the mistrial, and there is no

indication that alternate jurors were available. In *Whitfield v. Warden*, 486 F.2d 1118 (4th Cir. 1973), *cert. den.* 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1974), a juror might have overheard the argument on the motion for acquittal and the court was forced to declare a mistrial when one defendant agreed with the court's suggestion that the juror be interrogated while the other defendant did not. The fourth circuit stated that a mistrial was proper since the substitution of the juror with an alternate might have created problems of a racial nature. Indeed, the court stated: "Generally, declaration of a mistrial would be improvident if substitution of an alternate juror would permit the trial to proceed to a just verdict." *Id.* at 1123. And in *Smith v. Mississippi*, 478 F.2d 88 (5th Cir. 1973), *cert. den.* 414 U.S. 1113, 94 S.Ct. 844, 38 L.Ed.2d 740 (1973), the appellate court found that the trial court has "painstakingly weighed" all the factors and then reasonably exercised its discretion in declaring a mistrial which was sought by the prosecutor.

■ When the record, as here, demonstrates that the court did not attempt to determine whether the jury was prejudiced by the alleged misconduct and where such inquiry might have led the court to correct the situation with the mere dismissal of the individual juror, leaving sufficient jurors to decide the case, we believe the court abused its discretion in declaring a mistrial.

The order denying the motion to dismiss is therefore vacated with directions to dismiss the charges against petitioner.

HATHAWAY, C. J., and HOWARD, J., concur.