IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,
*Appellee,*

*v.*

TYWAN DEMETRIUS WOODS,
*Appellant.*

No. 2 CA-CR 2014-0020
Filed May 4, 2015

Appeal from the Superior Court in Cochise County
No. CR201000870
The Honorable Ann R. Littrell, Judge
The Honorable John F. Kelliher Jr., Judge

**REVERSED AND REMANDED WITH INSTRUCTIONS**

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Jonathan Bass, Assistant Attorney General, Tucson
*Counsel for Appellee*

Harriette P. Levitt, Tucson
*Counsel for Appellant*

**OPINION**

Presiding Judge Kelly authored the opinion of the Court, in which
Judge Howard concurred and Judge Vásquez dissented.

K E L L Y, Presiding Judge:

¶1 Following a jury trial, Tywan Woods was convicted of eight counts of aggravated assault, six counts of kidnapping, and two counts each of aggravated robbery and armed robbery. The trial court sentenced him to concurrent and consecutive prison terms totaling 78.5 years. On appeal, Woods argues the court violated his right not to be twice placed in jeopardy when it granted the state's motion for a mistrial without prejudice, permitting the state to try him again. Woods also argues the court erred by allowing an in-court identification of Woods and his vehicle. For the following reasons, we reverse Woods's convictions and sentences.

**Factual and Procedural Background**

¶2 We view the facts in the light most favorable to sustaining Woods's convictions and sentences.[1] *See State v. Haight-Gyuro*, 218 Ariz. 356, ¶ 2, 186 P.3d 33, 34 (App. 2008). In November 2009, L.C., her four daughters, her boyfriend, W.W., and three of his friends were held captive at gunpoint by Woods and two other men who had entered L.C.'s home purportedly to engage in a drug transaction with W.W. and one of his friends. Woods and his companions stole the marijuana that they were supposed to have purchased. They also took L.C.'s car keys and driver's license, as well as electronic items, cash, and jewelry. Woods was charged with multiple counts of armed robbery, aggravated robbery, kidnapping, and aggravated assault.[2] The first trial resulted in a hung jury, and the trial court apparently declared a mistrial and ordered a new trial.

---

[1] Woods's opening brief contains nearly twenty pages of facts, most of which are wholly irrelevant to the issues presented for our review. *See* Ariz. R. Crim. P. 31.13(c)(1)(iv) (appellant's brief shall include "[a] statement of facts relevant to the issues presented for review").

[2] The state dismissed a number of counts before Woods's second trial.

**¶3**       During Woods's second trial,[3] L.C. disrupted the proceedings, directed profanity and a racial epithet toward Woods in the presence of the jury, and apparently was stopped by police at or near the courthouse and arrested shortly thereafter. After the prosecutor informed the court that some jurors could have seen police activity outside the courthouse and may have known L.C. had been arrested, and the court reporter affirmed that two jurors had been overheard discussing the arrest, the court granted the state's motion for a mistrial. Following a third trial,[4] Woods was convicted and sentenced as set forth above. He timely appealed.

**Discussion**

**¶4**       Woods argues "[t]he trial court erred in declaring a mistrial following the second trial and, therefore, the third trial violated [his] right against double jeopardy." He did not object to the third trial on double jeopardy grounds; therefore, we review only for fundamental error. *See State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). A double jeopardy violation constitutes fundamental error. *State v. Price*, 218 Ariz. 311, ¶ 4, 183 P.3d 1279, 1281 (App. 2008). "In evaluating a double jeopardy claim, we review the trial court's decision to declare a mistrial for an abuse of discretion." *State v. Aguilar*, 217 Ariz. 235, ¶ 7, 172 P.3d 423, 426 (App. 2007).

**¶5**       Declaring a mistrial "is the most drastic remedy for trial error" and should be granted "only when justice will be thwarted if the current jury is allowed to consider the case." *State v. Nordstrom*, 200 Ariz. 229, ¶ 68, 25 P.3d 717, 738 (2001). "[T]he state 'must demonstrate manifest necessity for any mistrial declared over the objection of the defendant,' and the burden 'is a heavy one.'" *Gusler v. Wilkinson*, 199 Ariz. 391, ¶ 18, 18 P.3d 702, 706 (2001), *quoting Arizona v. Washington*, 434 U.S. 497, 505 (1978).

---

[3]Judge Ann R. Littrell presided over Woods's second trial and entered the mistrial ruling that is at issue here.

[4]Judge John F. Kelliher Jr., presided over the third trial.

¶6        At Woods's second trial, L.C. frequently used profanity in her testimony and expressed extreme contempt for the men who had held her children captive.  While one of her daughters was testifying, L.C. interrupted the questioning.  Woods's counsel asked the court to admonish L.C., and the court told her, "You need to keep quiet."  L.C. responded that she would leave the courtroom, but before leaving, accused Woods of holding her children "hostage," and directed profanity and a racial epithet toward him.

¶7        Woods moved for a mistrial, arguing that what L.C. had said was "totally inflammatory" and "very prejudicial."  The state responded that L.C. had not said "anything different than what she said on the stand."  The trial court agreed that "[i]t was very much in keeping with her angry outbursts during her testimony" and denied the motion for a mistrial.

¶8        The court admonished the jury to "disregard [L.C.'s] angry outbursts and what she said on her way out of this courtroom."  Woods then asked the court to remove the admonishment because L.C. was a witness and "the jury can consider her demeanor as she is going out as part of her testimony in this case."  The court told the jury it was "withdrawing [its] prior instruction to you, and allowing you to consider what [L.C.] said as she left the courtroom, to the extent that you deem it relevant and appropriate to do so."

¶9        The next day, before the jury was brought in, the trial court stated there had been "matters that happened outside of the presence of the jury that are of concern."  Woods's counsel told the court there had been "commotions going on outside" the courtroom after L.C. left.[5]  The trial court commented that after L.C. had left the courtroom the day before, "one could hear from inside the courtroom the sound of a woman yelling," although the specific words could not be heard.  The court also noted there had been a

---

[5]Although Woods's counsel reported to the trial court that L.C. and some spectators had made threats against Woods, his counsel, and the prosecutor, these alleged threats were made outside the courtroom and not in the presence of the jury.

"banging" and then "some sound, commotion outside of the court." The court stated it believed the jury "could probably also hear yelling and banging and some noise from outside."

¶10 The prosecutor told the trial court he had seen "law enforcement officers . . . clearing the scene" and "they were still present when the jury was allowed to exit the front of the court." According to the court, the jurors "certainly knew that [L.C.] had been stopped." The prosecutor told the court he "had some concern about the fact that they were seeing what was still being cleaned up or cleared out in front of the courthouse." The court stated it understood L.C. had been arrested later near the courthouse, and the court reporter nodded affirmatively when asked whether she had heard two jurors "discussing that the person being arrested . . . was [L.C.]."

¶11 The state moved for a mistrial, citing concerns about "the defendant's ability to receive a fair trial from this jury at this point," but it did not articulate how Woods might have been prejudiced by L.C.'s behavior. Woods stated that he "would prefer to continue with the trial." The trial court explained that one of the incidents the day before would not alone have been sufficient for a mistrial, "[b]ut, cumulatively, I am concerned that the defendant, well, and the State for that matter, would be denied a fair trial, that the jury would not be making decisions based on the evidence presented here in court, but extraneous matters." The court did not explain the basis for its concern that Woods would be denied a fair trial based on L.C.'s outburst. The court then granted without prejudice the state's motion for a mistrial without making a specific finding that there was manifest necessity for its ruling.

¶12 As noted above, the state bears the burden of "demonstrat[ing] 'manifest necessity' for any mistrial declared over the objection of the defendant," and the burden "is a heavy one." *Washington*, 434 U.S. at 505. Indeed, "the words 'manifest necessity' appropriately characterize the magnitude of the prosecutor's burden." *Id.* Although the trial court here did not make a specific finding of manifest necessity, if there is "sufficient justification" for the court's ruling, "the failure to explain that ruling more completely does not render it constitutionally defective." *See id.* at 516-17.

¶13 We agree with the trial court's assessment that no information was conveyed during L.C.'s outburst other than her belief that Woods had held her children hostage and that she harbored animosity toward Woods, which already were apparent to the jury from L.C.'s testimony. In a similar context, the jury in *State v. Bible* heard the victim's father refer to the defendant as "[t]hat f[***]ing a[**]hole." 175 Ariz. 549, 597, 858 P.2d 1152, 1200 (1993) (second and third alteration added, remaining alteration in *Bible*). The trial court admonished the jury to disregard the outburst and excluded the victim's father from the courtroom for the remainder of the trial. *Id.* The court denied Bible's motion for a mistrial, stating, "I don't think it's really the substance for a mistrial. I don't think there is any doubt in the jury's mind about how [the victim's father] feels about Mr. Bible. That's certainly been clear for days." *Id.* at 597-98, 858 P.2d at 1200-01 (alteration in *Bible*). Our supreme court noted that "[n]o information was conveyed other than the father's animosity toward Defendant, a feeling that could hardly have surprised the jurors." *Id.* at 598, 858 P.2d at 1201. The court concluded that the trial court did not abuse its discretion in denying Bible's motion for a mistrial. *Id.*

¶14 In addition to observing L.C.'s outburst in the courtroom, the jurors presumably heard commotion outside the courtroom after she left. They also might have seen police vehicles outside the courthouse and at least two may have known L.C. had been arrested. But, as the trial court acknowledged, much of the commotion took place outside the presence of the jury. According to the court, it was the cumulative effect of L.C.'s outburst and the events that followed that led it to grant the state's motion for a mistrial.

¶15 Our supreme court has stated that when the trial court fails to make a "real effort to determine whether there were any feasible alternatives to declaring a mistrial," there is no manifest necessity for a mistrial. *McLaughlin v. Fahringer*, 150 Ariz. 274, 277-78, 723 P.2d 92, 95-96 (1986). Here, the court could have but did not ask the jurors whether any extraneous information might have come to their attention. In *Evans v. Abbey*, a juror engaged a witness in conversation about the case. 130 Ariz. 157, 158, 634 P.2d 969, 970

(App. 1981). We concluded the trial court had abused its discretion in declaring a mistrial over the defendant's objection when the court "did not attempt to determine whether the jury was prejudiced by the alleged misconduct and where such inquiry might have led the court to correct the situation with the mere dismissal of the individual juror." *Id.* at 160, 634 P.2d at 972.

¶16 Importantly, the trial court made no findings regarding what the jurors saw or heard after L.C. left the courtroom. Instead, the court simply asked Woods's attorney to repeat what he apparently had told the court in chambers. The court also described what it had heard after L.C. left and stated it "believe[d] . . . the jury could probably also hear" the commotion. Even if we assume the jurors heard the commotion in the hall outside the courtroom, we do not know whether they connected the police presence outside the courthouse to L.C.'s conduct. And, although the court assumed the jurors knew L.C. had been stopped, the only information the court had was the prosecutor's statement that there was still a police presence outside the courthouse when the jurors were allowed to leave. There is no indication L.C. was still at the courthouse when the jurors left; the court stated the police had addressed the situation and had "allowed her to drive away."

¶17 Moreover, we cannot be certain, even from the court reporter's account, why any jurors might have believed L.C. had been arrested, since she apparently had been permitted to leave the courthouse and was arrested elsewhere some time later. Although the court stated it understood that L.C. "was later arrested just up the canyon," there was no explanation of the reason for her arrest. Nor do we know whether the two jurors the court reporter overheard "discussing that the person being arrested . . . was [L.C.]" shared that information with any of the other jurors.

¶18 In this case, had any jurors responded affirmatively when asked whether they had seen or heard L.C.'s outburst and the ensuing commotion, the trial court could have inquired whether that information affected their ability to remain impartial. *See Evans*, 130 Ariz. at 160, 634 P.2d at 972 (approving inquiry into whether jury prejudiced by alleged misconduct before ordering mistrial). By failing to do so, the court was unable to consider whether any jurors

who could no longer be impartial could be dismissed with alternate jurors seated in their place—an option potentially available because the fourteen-juror panel provided for two alternates.

¶19      Another option available to the trial court was a curative instruction and admonishment to the jury to disregard any commotion or conduct by L.C. after she left the courtroom.  In *Jones v. Kiger*, 194 Ariz. 523, ¶ 4, 984 P.2d 1161, 1163 (App. 1999), a witness gave hearsay testimony that a defendant asserted "was prejudicial and antagonistic to her defense."   Her co-defendant "insisted that the hearsay testimony was not prejudicial to his case and requested that the trial continue."   *Id.* ¶ 5.  In concluding that the trial court had abused its discretion in granting a mistrial over the co-defendant's objection, we noted that the court "could have . . . admonished the jury not to consider" the testimony.  *Id.* ¶ 12.  Here, although Woods had indicated the day before that he did not want a curative instruction, it appears the court did not consider the possibility of giving another curative instruction when the state moved for a mistrial and Woods objected.

¶20      Perhaps most importantly, the court did not address Woods's desire to continue with the trial despite the disruption. *See id.* ¶ 9.  In *Jones*, we pointed out that the trial court "ignored defense counsel's assertion that his case was not damaged [by the hearsay testimony] without considering why that might be true." *Id.* ¶ 10.  We stated that, although "[t]he trial court is usually in the best position to determine whether manifest necessity requires a mistrial," the court "must recognize that the defendant has a significant interest in deciding whether to take the case from the jury and 'retains primary control over the course to be followed in the event of such error.'"  *Id.* ¶ 9, *quoting United States v. Dinitz*, 424 U.S. 600, 609 (1976) (alteration in *Jones*).  We further observed that "'a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew,'" and we stated the trial judge "'must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare.'"   *Id.* ¶ 9, *quoting Curry v. Superior Court*, 470 P.2d 345, 351 (Cal. 1970).

¶21 Here, Woods stated he "want[ed] to resolve the issue" because he had "been going through this already for two-and-a half years" and that the multiple trials were "affecting [him] with [his] jobs" and "supporting [his] family." The court made no further inquiry after Woods stated he preferred to continue with the trial. *See Barton v. Commonwealth*, 432 N.E.2d 524, 526 (Mass. 1982), *citing Washington*, 434 U.S. at 516-17 ("An appellate court will be deferential to the judge's discretionary determination that manifest necessity exists only if it is clear from the record that the judge has given careful consideration to the available alternatives and to the defendant's interest in having the trial concluded in a single proceeding.").

¶22 We conclude the trial court abused its discretion by granting a mistrial, and Woods's third trial violated his right to be free from double jeopardy and was fundamental error.

**The Dissent**

¶23 Our dissenting colleague disagrees with our conclusion that the trial court failed to make a "real effort" to determine whether there were feasible alternatives to ordering a mistrial, asserting that the court did not need to poll the jurors to determine how much of the commotion following L.C.'s outburst they had observed and whether they nevertheless could remain impartial. But because the court did not poll the jurors, we are left to speculate as to what they might have seen or heard after L.C. left the courtroom. As detailed above, the record does not establish that the jurors saw police arresting L.C. or that the two jurors the court reporter overheard discussing L.C.'s arrest shared that information with any other jurors.

¶24 Our dissenting colleague acknowledges the trial court "could have polled the jurors about their ability to remain impartial despite their observations of L.C.'s outburst and the ensuing commotion" but states polling the jury was unnecessary because "absolute necessity is not required" before declaring a mistrial. But a "high degree" of necessity is required, *see Washington*, 434 U.S. at 506, and polling the jury would have established whether any jurors could no longer be impartial as a result of events that occurred

outside the courtroom. Under any standard, the court is required to consider alternatives. Because the court did not pursue the alternative of polling the jurors, and therefore did not know what they might have seen or heard, we cannot agree there was a "high degree" of necessity for a mistrial.[6]

**¶25** Moreover, neither the state nor the trial court articulated any prejudice to Woods resulting from L.C.'s conduct. In denying Woods's motion for a mistrial the day before, the court noted that L.C.'s behavior as she left the courtroom was no different from her behavior during her testimony, in which she used obscenities to refer to Woods. In granting the state's motion for a mistrial, the court made no assessment of the prejudice to Woods as a result of L.C.'s conduct after she left the courtroom. And although the court indicated it also was concerned about the state's ability to receive a fair trial, neither the court nor the state articulated any prejudice to the state resulting from L.C.'s behavior. The outburst might have damaged L.C.'s credibility, but any damage to her credibility would have been done by the time she had finished testifying, and we do not see how L.C.'s further damaging her own credibility can be said to deprive the state of a fair trial. Moreover, L.C. was not the only witness who identified Woods as one of the assailants. Thus, her testimony was not essential, and any damage to her credibility did not significantly prejudice the state's case. *See Morris v. Livote*, 962 N.Y.S.2d 59, 62 (App. Div. 2013).

**¶26** Our dissenting colleague states that the record "suggests the court was aware of the option of giving an instruction but implicitly chose not to do so" because it had given a curative instruction the day before after denying Woods's motion for a

---

[6]As our dissenting colleague correctly points out, the state made clear it wanted the trial court to order a mistrial only if it could re-try Woods. But the state's equivocal position indicates it may have had some concern about whether there was manifest necessity for a mistrial. And the state claimed to be concerned about Woods's ability to receive a fair trial, not its own. Finally, the dissent does not explain how the state's position below affects the double jeopardy analysis.

mistrial. But the situation had changed and alternatives needed to be re-considered. Although it is correct that "[a] trial court has acted within its sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though '[i]n a strict literal sense, the mistrial [is] not necessary,'" *State v. Givens*, 161 Ariz. 278, 281, 778 P.2d 643, 646 (App. 1989), *quoting Washington*, 434 U.S. at 511 (first alteration added, remaining alterations in *Givens*), that principle assumes that the trial court in fact first considered and then rejected alternatives. But we are not willing to assume that the court here considered alternatives in response to the state's motion for a mistrial when it states its reasons for the mistrial on the record and does not indicate it considered them. *See Barton*, 432 N.E.2d at 526, *citing Washington*, 434 U.S. at 516-17.

¶27 The trial court had no reasoned basis to reject the obvious alternative of polling the jurors to determine what their exposure to L.C.'s misconduct had been and how it had affected them, if at all. Indeed, courts commonly require trial judges to poll jurors when their impartiality is called into question. *See, e.g., State v. Phillips*, 656 N.E.2d 643, 660-61 (Ohio 1995) (trial court that learns of improper outside communication with juror must hold hearing to determine whether communication biased juror); *Artisst v. United States*, 554 A.2d 327, 331 (D.C. 1989) (holding that trial court "was under an obligation to investigate the possibility of juror prejudice by more than a perfunctory poll of the jury"); *People v. McNeal*, 90 Cal. App. 3d 830, 838 (1979) ("Once the court is alerted to the possibility that a juror cannot properly perform his duty to render an impartial and unbiased verdict, it is obligated to make reasonable inquiry into the factual explanation for that possibility."); *cf. People v. Castillo*, 534 N.Y.S.2d 188, 189 (App. Div. 1988) (denial of defendant's motion for mistrial not an abuse of discretion where trial court "conducted a painstakingly thorough and searching inquiry of each juror individually, thereby discovering the nature and extent of the misconduct and its effect upon the members of the jury").

¶28 *Washington* and *Simmons v. United States*, 142 U.S. 148 (1891), do not persuade us that the trial court here did not abuse its discretion by failing to poll the jury because in both of those cases,

the jury's exposure to potentially prejudicial information was evident. In *Washington*, the trial court ordered a mistrial because the defendant's counsel "made improper and prejudicial remarks during his opening statement to the jury." 434 U.S. at 510. In *Simmons*, the defendant's counsel sent to the newspapers a copy of a letter denying the truth of statements made by an individual who claimed a juror was acquainted with the defendant. 142 U.S. at 149. The substance of the letter was published in the newspapers, and the jurors stated they had read the letter. *Id.* at 149-50. In both cases, the trial court could be certain the jurors had received information that could affect their ability to remain impartial. Here, as discussed above, there was no way for the trial court to know, without polling the jury, exactly what the jurors had heard or observed.

¶29 Our dissenting colleague does not address the fact that the trial court ordered a mistrial over Woods's objection, thereby depriving him of his "'valued right to have his trial completed by a particular tribunal.'" *United States v. Jorn*, 400 U.S. 470, 484 (1971), *quoting Wade v. Hunter*, 336 U.S. 684, 689 (1949). It is true, as the dissent points out, that the defendant's "valued right . . . must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Id.* at 480. But the trial court "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *Id.* at 486. This, we conclude, the trial court did not do.

## Disposition

¶30 For the foregoing reasons, we reverse Woods's convictions and sentences and remand to the trial court with instructions to dismiss the case with prejudice.[7]

---

[7]Because we reverse Woods's convictions and sentences, we need not address his argument that the trial court in his third trial erred by allowing an in-court identification of Woods and his vehicle.

V Á S Q U E Z, Judge, dissenting:

**¶31**      As the majority points out, our supreme court has stated that when a trial court fails to make a "real effort to determine whether there were any feasible alternatives to declaring a mistrial," there is no manifest necessity for a mistrial. *McLaughlin v. Fahringer*, 150 Ariz. 274, 277, 723 P.2d 92, 95 (1986). Relying on this principle, the majority reverses Woods's convictions with prejudice, concluding the trial court did not consider the alternatives of polling the jury and giving a curative instruction. I respectfully dissent because I disagree that the court in this case failed to make a "real effort" to consider feasible alternatives to a mistrial and the record establishes manifest necessity.

**¶32**      Because "[t]he trial court is usually in the best position to determine whether manifest necessity requires a mistrial," we review its decision for an abuse of discretion. *Jones v. Kiger*, 194 Ariz. 523, ¶¶ 9-10, 984 P.2d 1161, 1164 (App. 1999). "The words 'manifest necessity' . . . do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Arizona v. Washington*, 434 U.S. 497, 505-06 (1978). Thus, "the degree of deference [we] should accord the trial court depends on the circumstances that gave rise to the mistrial." *State v. Aguilar*, 217 Ariz. 235, ¶ 13, 172 P.3d 423, 427 (App. 2007). At one extreme, "the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence." *Washington*, 434 U.S. at 508. "At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict." *Id.* at 509.

**¶33**      In *Washington*, the Supreme Court stated that defense counsel's improper and prejudicial arguments to the jury "may have affected the impartiality of the jury" and "the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation." *Id.* at 510-11; *see also United States v. Chapman*, 524 F.3d 1073, 1082 (9th Cir. 2008) (when trial court's decision based on "own observations and personal assessment," we must give special deference). Similarly, here, L.C.'s outbursts and subsequent commotion clearly were improper and may have affected the impartiality of the jury.

Although nothing in the record suggests that either party caused or provoked the outbursts and commotion, in my view, the majority nevertheless improperly applies the strictest scrutiny in evaluating the trial court's decision.

¶34       Notably, the state's motion for a mistrial was content neutral.  The prosecutor stated:

> With everything that has been said, your Honor, and everything that, that has gone before, even the events of yesterday afternoon, or last evening, I now become concerned that we have a jury that, that may have a reduced ability to be fair and impartial in this matter.

The prosecutor made the motion "in the interest of justice and out of concern for the defendant's right to a fair trial," but he also stated that he was inclined to withdraw it if Woods did not join.  When the trial court asked, "are you inclined to, or are you," the prosecutor made clear:

> I don't want there to be any confusion about the State's intention to bring this matter to verdict, whether it be this jury or a subsequent jury.  So if the Court believes that the State's motion may be a waiver of that right, or result in a situation where the State would be precluded from retrying the defendant, I can't allow that to be the end result.
>
> . . . .
>
> So, again, if the Court has any concern about the State's right to retry this matter if a mistrial is granted, then I'll withdraw the motion.

Thus, contrary to the majority's assertion, the prosecutor's position was not equivocal.  *Supra*, n.6.  And, given that position, it is clear

the court considered whether Woods could be retried in making its determination and believed it had no other option but to declare a mistrial. In contrast, the majority's decision punishes the state in the exact way the prosecutor sought to avoid.

¶35        Both the defendant and the state have a right to a trial decided by a fair and impartial jury. *Washington*, 434 U.S. at 516; *State v. Reynolds*, 11 Ariz. App. 532, 534, 466 P.2d 405, 408 (1970). "[T]he defendant's right to a single trial 'must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.'" *Aguilar*, 217 Ariz. 235, ¶ 10, 172 P.3d at 426, *quoting Wade v. Hunter*, 336 U.S. 684, 689 (1949). In this case, the trial court perceived an escalating series of events involving L.C. that culminated in its determination that the process was unfair to both Woods and the state.[8] Although Woods opposed the state's motion for a mistrial, this is nonetheless a determination to which we owe great deference. *See Washington*, 434 U.S. at 510-11. "In short, [the trial court] is far more 'conversant with the factors relevant to the determination' than any reviewing court can possibly be." *Id.* at 514, *quoting Wade*, 336 U.S. at 689.

¶36        I recognize our inquiry does not end with a determination that the trial court is entitled to great deference. We must be satisfied the court has "exercised 'sound discretion' in declaring a mistrial." *Id.* As the Supreme Court stated in *Washington*, a trial court's decision cannot be upheld if it "acts irrationally or irresponsibly." *Id.* In this case, the court did not act irrationally or irresponsibly.

---

[8]The majority acknowledges that some of the trial spectators had made threats against Woods and the attorneys outside the jury's presence. *Supra*, n.5. However, the spectators also made comments that at least one individual "pretty strongly [thought] w[ere] heard by the jury." The spectators also engaged in "inappropriate behavior," which included one spectator "changing [his] shirt in the middle of [the] jury proceeding." These incidents presumably added to the escalating series of events with which the trial court was concerned.

¶37        The majority first concludes the trial court "could have but did not ask the jurors whether any extraneous information might have come to their attention." *Supra*, ¶ 15. But the record shows that polling the jury on this issue was not necessary because it is evident that the jurors were exposed to potentially prejudicial information. When discussing the incident with counsel, the court noted that after L.C. had left the courtroom, "one could hear from inside the courtroom the sound of a woman yelling," "banging," and "commotion outside of the court." The court further stated the jury "could probably also hear [the] noise from outside." The prosecutor informed the court that law enforcement officers were still outside "clearing the scene . . . when the jury was allowed to exit the front of the courthouse." The court thus reasonably concluded that the jury "knew . . . [L.C.] had been stopped" by police. And, the court's belief was confirmed when the court reporter indicated she had heard two jurors "discussing that the person being arrested . . . was [L.C.]." Woods does not dispute any of this on appeal. Because the record already contained sufficient evidence that the jurors had witnessed the commotion involving L.C., polling the jury on this issue would have served little purpose.

¶38        Ideally, as the majority points out, the trial court also could have polled the jurors about their ability to remain impartial despite their observations of L.C.'s outburst and the ensuing commotion. *Supra*, ¶ 18. Because there were two alternate jurors, the court potentially could have dismissed only those who could not proceed. But, although the record does not show a mistrial was absolutely necessary, "absolute necessity is not required" before declaring a mistrial. *Aguilar*, 217 Ariz. 235, ¶ 14, 172 P.3d at 427. "A trial court has acted within its sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though '[i]n a strict literal sense, the mistrial [is] not necessary.'" *State v. Givens*, 161 Ariz. 278, 281, 778 P.2d 643, 646 (App. 1989), *quoting Washington*, 434 U.S. at 511 (alterations in *Givens*). Indeed, the Supreme Court has cautioned against a "mechanical," per se rule, instead adopting a "flexible standard," which gives the trial court "broad discretion." *Illinois v. Somerville*, 410 U.S. 458, 462 (1973).

¶39     The majority also concludes the trial court could have given "a curative instruction and admonishment to the jury to disregard any commotion or conduct by L.C. after she left the courtroom." *Supra*, ¶ 19. The record does not show that the court explicitly considered giving a curative instruction in response to the state's request for a mistrial. But explicit findings on alternatives to a mistrial are not required, *see Washington*, 434 U.S. at 501, 516-17; *Givens*, 161 Ariz. at 281-82, 778 P.2d at 646-47, and the record suggests the court was aware of the option of giving an instruction but implicitly chose not to do so.

¶40     In denying Woods's earlier motion for a mistrial based on L.C.'s in-court outburst, the trial court instead decided to give a curative instruction, admonishing the jury to disregard L.C.'s statements. But, at Woods's urging, the court later withdrew that instruction. Thus, the record shows the court was fully aware of this alternative—and Woods's opposition to it—when it granted the state's motion for a mistrial the following day. *See State v. Williams*, 220 Ariz. 331, ¶ 9, 206 P.3d 780, 783 (App. 2008) (we assume trial court knows and applies law). Moreover, "curative instructions . . . 'will not necessarily remove the risk of bias.'" *State v. Gallardo*, 225 Ariz. 560, ¶ 6, 242 P.3d 159, 163 (2010), *quoting Washington*, 434 U.S. at 513; *see also State v. Runningeagle*, 176 Ariz. 59, 68, 859 P.2d 169, 178 (1993) ("[T]here could be instances where a curative instruction may be inadequate . . . ."). And, the trial court was in the best position to make that determination based on the escalating circumstances. *See Jones*, 194 Ariz. 523, ¶ 9, 984 P.2d at 1164.

¶41     Based on the record before us, I cannot agree that the trial court abused its discretion by declaring a mistrial. *See id.* ¶ 10. The circumstances leading to the court's declaration of a mistrial spanned two days. Notably, Woods considered L.C.'s outburst the first day to be so egregious that he moved for a mistrial. Woods clearly believed he was prejudiced by L.C.'s conduct to merit requesting a mistrial at that point. As to the state's motion for a mistrial made on the second day, the majority takes issue with the fact that neither the state nor the court articulated any prejudice to Woods or the state resulting from L.C.'s conduct. *Supra*, ¶ 25. But, given Woods's own motion for a mistrial, and the escalating

circumstances leading to the court's determination, I do not believe such articulation was necessary. *See Washington*, 434 U.S. at 516-17 (trial court did not need to articulate on record all factors influencing decision to grant mistrial where basis for decision was "adequately disclosed by the record"). It is undisputed that the jury observed L.C.'s outburst as she was leaving the courtroom, that the jury presumably heard the commotion outside, and that the court reporter informed the court that at least two of the jurors had discussed L.C.'s arrest. Any prejudice thus became that much more apparent from the record. In addition, the state's ability to receive a fair trial was equally implicated by these events.

¶42        The trial court "gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial." *Id*. at 515-16. In addition, there were multiple in-chambers and off-the-record conversations among the court and counsel, further demonstrating that the court "acted deliberately," not "abruptly." *Chapman*, 524 F.3d at 1082. Given Woods's own request for a mistrial for similar but less egregious circumstances, the court's decision is "entitled to special respect," *Washington*, 434 U.S. at 510, 515-16, because it was in the best position, having just heard counsel's arguments and assessed the situation over a two-day period, *see also Jones*, 194 Ariz. 523, ¶¶ 9-10, 984 P.2d at 1164. I thus cannot agree the court abused its discretion by declaring a mistrial. And, based on the foregoing, I conclude Woods's right against being twice placed in jeopardy was not violated and dismissing the charges against him with prejudice is unwarranted and does not serve the interests of justice.