IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT BURNS, *Plaintiff/Appellant*,

*v.*

ARIZONA PUBLIC SERVICE COMPANY, et al., *Defendants/Appellees.*

No. 1 CA-CV 19-0183
FILED 3-4-2021

Appeal from the Superior Court in Maricopa County
No.  CV2017-001831
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

COUNSEL

Richards & Moskowitz PLC, Phoenix, AZ
By William A. Richards
*Counsel for Plaintiff/Appellant*

Jenner & Block LLP, Washington, DC
By Matthew E. Price

Osborn Maledon PA, Phoenix, AZ
By Mary R. O'Grady, Joseph N. Roth
*Co-Counsel for Defendants/Appellees Arizona Public Service Company, Pinnacle West Capital Corporation, and Donald Brandt*

Polsinelli PC, Phoenix, AZ
By Edward F. Novak, Jonathan G. Brinson
*Counsel for Defendant/Appellee Arizona Corporation Commission*

Broening Oberg Woods & Wilson PC, Phoenix, AZ
By Sarah L. Barnes
*Counsel for Defendant/Appellee Commissioner Boyd W. Dunn*

---

**OPINION**

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Judge Jennifer B. Campbell joined.

---

**C A T T A N I**, Judge:

¶1        Arizona Corporation Commissioner Robert Burns challenges the dismissal of his two amended complaints against Arizona Public Service Company ("APS"), its parent company, Pinnacle West Capital Corporation ("Pinnacle West"), and their president and board chairman (collectively, the "APS Parties"), and against the Commission and other Commission members (collectively, the "ACC Parties"). For reasons that follow we affirm, holding that a member of the Corporation Commission lacks authority to individually enforce an investigatory subpoena in a rate-making case over the opposition of the majority of the Commission.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        On August 25, 2016, Burns issued two subpoenas to the APS Parties in a rate-making case pending before the Commission (the "Rate Case"). The subpoenas sought information relating to whether the APS Parties funneled donations through independent expenditure groups in support of other Commission candidates in the 2014 election. Burns also initiated a new Commission proceeding in February 2017 (the "Rule-Making Case"), in which he issued the same subpoenas.

¶3        The APS Parties did not comply fully with the subpoenas in either proceeding. In March 2017, Burns sued the APS Parties for declaratory relief, asking the court to declare that he was authorized to demand compliance with the subpoenas without the approval of other Commission members. On March 30, 2017, the APS Parties moved to

dismiss on the basis that Burns had not exhausted his administrative remedies in either the Rate Case or the Rule-Making Case. Over Burns's objection, the superior court stayed both proceedings to allow Burns to do so.

¶4 Burns subsequently sought to call six witnesses in the Rate Case, including APS and Pinnacle West's president and board chairman. The administrative law judge ("ALJ") assigned to the case declined to call the witnesses absent direction from the Commission. Burns sought emergency relief from the ALJ and moved to disqualify two of his fellow commissioners, contending they had benefited from "dark money" from "APS and/or Pinnacle West." The ALJ did not consider either motion. Burns then sought to compel the APS Parties to comply with the subpoenas.

¶5 The Commission set a June 20, 2017, public meeting to consider Burns's motions. The other four commissioners voted to deny the motions in an interlocutory order issued on June 27, 2017 over Burns's dissent. The other commissioners concluded that: (1) the information Burns sought was not relevant to the Rate Case; (2) the subpoenas he issued were overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence; and (3) Burns's requests for witness interviews sought irrelevant information and were not reasonably calculated to lead to the discovery of admissible evidence.

¶6 Burns then sought leave to amend his superior court complaint to add the Commission and his fellow commissioners as defendants and to challenge the June 27, 2017 order. The superior court granted leave to amend, and Burns filed his first amended complaint on August 4, 2017. On August 20, 2017, Burns filed a special action in the Arizona Supreme Court challenging the denial of his motion to suspend the Rate Case to investigate potential grounds to disqualify other commissioners. The Arizona Supreme Court declined jurisdiction, and shortly thereafter, the ALJ approved a final settlement in the Rate Case, which the Commission voted to confirm, with Burns casting a dissenting vote.

¶7 The APS Parties and the ACC Parties then moved to dismiss Burns's first amended complaint on numerous grounds, including: the Commission's final Rate Case order rendered it moot; Burns lacked authority to enforce the subpoenas over the Commission's vote not to do so; Burns could not sue the other commissioners; the subpoenas intruded on the Legislature's authority to establish the scope of mandatory disclosures in rate-making matters and the Commission's authority to

establish reporting requirements for regulated entities; and the Commission's rulings were correct. The superior court ruled in Burns's favor on four issues, concluding: (1) the case was not moot; (2) a request for declaratory relief was an appropriate vehicle to consider disputes over the Commission's investigatory powers; (3) the subpoenas did not encroach on the Legislature's or the Commission's powers; and (4) Burns had the authority to issue the subpoenas.

¶8 The court ruled against Burns, however, on the issue of whether he could unilaterally enforce the subpoenas, finding that such authority rested solely with the Commission. The court reasoned that it "could not overrule the decision of a majority of the Commission about the proper scope of an ACC investigation without running afoul of the 'separation of powers' principles that are at the heart of our system of government." On that basis, the court dismissed the first amended complaint.

¶9 Burns sought leave to amend his complaint to request specific declaratory relief on the four rulings in his favor. He also contended he had a due process right to investigate and present facts relevant to the APS Parties' financial support. of the campaigns of the Defendant Commissioners, or against the campaigns of any of their election opponents. The court granted leave to amend in part but denied Burns's requests for declaratory relief as to its prior four rulings.

¶10 After Burns filed a second amended complaint, the APS Parties and the ACC Parties moved to dismiss, contending (1) Burns had no constitutional authority to pursue an investigation over a vote of the Commission or to seek to disqualify other commissioners from ruling in the Rate Case; (2) Burns lacked standing to assert any due process claims stemming from the Rate Case; and (3) the resolution of the Rate Case and the "rule of necessity" rendered his contentions moot. The court granted the motions, concluding that Burns "lack[ed] standing to assert the due process rights of litigants to an unbiased adjudicative process" and "no other constitutional or statutory authority entitle[d] him to initiate and maintain an investigation into potential grounds for disqualification of his fellow Commission members." The court did not reach the APS Parties' and ACC Parties' other arguments.

¶11 Burns timely appealed, and we have jurisdiction under A.R.S. §§ 12-1837 and -2101(A)(1).

## DISCUSSION

### I.      Mootness.

**¶12**          The APS Parties and the ACC Parties urge this court to dismiss the appeal as moot.  We decline to do so.

**¶13**          Courts generally will not hear declaratory judgment cases that raise only moot questions.  *Thomas v. City of Phoenix*, 171 Ariz. 69, 74 (App. 1991).  A case becomes moot when an event occurs that causes "the outcome of the appeal to have no practical effect on the parties."  *Sedona Priv. Prop. Owners Ass'n v. City of Sedona*, 192 Ariz. 126, 127, ¶ 5 (App. 1998).  Mootness is not a constitutional concern under Arizona law but rather "a matter of prudential or judicial restraint subject to the exercise of our discretion."  *Cardoso v. Soldo*, 230 Ariz. 614, 617, ¶ 5 (App. 2012).  And we may consider an otherwise moot appeal if it presents an issue of significant public importance or is likely to recur.  *Big D Constr. Corp. v. Ct. of Appeals*, 163 Ariz. 560, 563 (1990).

**¶14**          The APS Parties and the ACC Parties contend that Burns's appeal is moot because the Rate Case has concluded and the two commissioners elected in 2014 are no longer on the Commission. Additionally, in August 2019, the Commission adopted a revised Code of Ethics that imposes new reporting requirements for commissioners relating to campaign contributions.  *See* Code of Ethics, Decision No. 77345, Docket No.      AU-00000E-17=0079,      at      7      (Aug.      7,      2019), https://docket.images.azcc.gov/0000199337.pdf?i=1609444846123. Nevertheless, the issues Burns raises are of significant public importance involving the rights and powers of commissioners to investigate matters relevant to rate-making proceedings and to enforce compliance with those investigations.  Moreover, although the Rate Case has been resolved, similar issues could arise in future rate cases.  Accordingly, we exercise our discretion to consider the merits of the appeal.  *See Arpaio v. Maricopa Cnty. Bd. of Supervisors*, 225 Ariz. 358, 362, ¶ 14 (App. 2010) (exercising discretion to hear an otherwise moot appeal because "a decision on the substantive issues could affect similar future legislative acts").

### II.     Motion to Dismiss.

**¶15**          We review de novo the dismissal under Arizona Rule of Civil Procedure 12(b)(6) of Burns's amended and second amended complaint. *See Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012).  We accept all well-pleaded facts as true and will affirm only if Burns would not have been

entitled to relief under any facts susceptible of proof. *See Zubia v. Shapiro*, 243 Ariz. 412, 414, ¶ 13 (2018).

**¶16**　　　Burns argues that the superior court erred by concluding that it could not review Commission orders declining to enforce a single commissioner's investigatory subpoena. He argues that, because rate-making matters are quasi-judicial, the superior court has the authority to decide whether the Commission's investigatory actions during a rate-making proceeding exceeded its plenary constitutional authority or were arbitrary and capricious.

**¶17**　　　"The framers established the Commission as a separate, popularly-elected branch of state government." *Ariz. Corp. Comm'n v. Woods*, 171 Ariz. 286, 290 (1992), *abrogated by Johnson Utilities, L.L.C. v. Ariz. Corp. Comm'n*, 249 Ariz. 215 (2020). The Commission is "a constitutional body which owes its existence to provisions in the organic law of this state." *Miller v. Ariz. Corp. Comm'n*, 227 Ariz. 21, 24, ¶ 12 (App. 2011). It has broad constitutional and statutory powers to regulate public service corporations. *Campbell v. Mountain States Tel. & Tel. Co.*, 120 Ariz. 426, 431 (App. 1978). Generally speaking, "in areas in which the . . . Commission is given exclusive power, it is supreme subject to judicial review." *Stop Exploiting Taxpayers v. Jones*, 211 Ariz. 576, 581, ¶ 20 (App. 2005). Here, the superior court recognized its authority to consider whether the Arizona Constitution afforded Burns the right to enforce his subpoenas unilaterally in a rate-making case, *see Polaris Int'l Metals Corp. v. Ariz. Corp. Comm'n*, 133 Ariz. 500, 506 (1982), but concluded that Burns was not entitled to the declaratory relief he requested.

**¶18**　　　Burns argues that, by affirming the Commission's decision not to enforce his subpoenas, the superior court improperly granted the Commission an implied power to "nullify[] their fellow commissioners' investigatory subpoenas or requests to call and question witnesses in a rate case." *See City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 212, ¶ 20 (2019) (noting that Commission "has no implied powers and its powers do not exceed those to be derived from a strict construction of the Constitution and implementing statutes"). The superior court's ruling created no such power.

**¶19**　　　The Arizona Constitution grants "[t]he corporation commission, and the several members thereof," authority to "inspect and investigate the property, books, papers, business, methods, and affairs of . . . any public service corporation doing business within the state, and for the purpose of the commission, and of the several members thereof, shall

have the power of a court of general jurisdiction to enforce the attendance of witnesses and the production of evidence by subpoena, attachment, and punishment, which said power shall extend throughout the state." Ariz. Const. art. 15, § 4.

¶20 The Constitution also provides, however, that "the commission may make rules and regulations to govern [proceedings instituted by and before it]." Ariz. Const. art. 15, § 6; *see also* A.R.S. § 40-202(A) ("The *commission* may supervise and regulate every public service corporation in the state and do all things, whether specifically designated in this title or in addition thereto, necessary and convenient in the exercise of that power and jurisdiction.") (emphasis added).

¶21 And one such rule that the Commission has prescribed is that the Commission as a whole resolves objections to subpoenas. Ariz. Admin. Code R14-3-109(O). Thus, although individual commissioners have the power to issue subpoenas, that power is not without limits when exercised as part of commission proceedings and is instead subject to review and oversight by the Commission as a whole.

¶22 Burns argues that R14-3-109(O) is a rule applicable only to contested cases, and "[i]nvestigatory subpoenas can be issued by commissioners in their individual capacity for purposes in addition to or outside of uses in contested cases." But the subpoenas in question here were in fact issued during the course of a contested rate-making proceeding. Accordingly, R14-3-109(O) applies to the subpoenas, and whether it would apply if Burns had issued the subpoenas in a different context is not before us.[1]

¶23 Our review of a Commission determination not to enforce a subpoena is deferential. We typically afford the Commission "wide berth" in reviewing the validity of its investigations, *Carrington v. Ariz. Corp. Comm'n*, 199 Ariz. 303, 305, ¶ 8 (App. 2000), and we afford the Commission the same latitude when it votes not to pursue an investigation started by one of its elected members. If we were to grant relief in this case, we would essentially be overturning the Commission's vote and directly interfering

---

[1] As noted above, Burns initially pursued subpoenas in the Rule-Making Case, but the court stayed those proceedings to allow Burns to exhaust administrative remedies. The record does not reflect any further action in the Rule-Making Case, and the motions to dismiss that Burns appeals from here addressed only the two subpoenas issued in the Rate Case.

in Commission operations. *See* A.R.S. § 40-102(C) ("The act of a majority of the commissioners when in session as a board shall be the act of the commission."); A.R.S. § 40-254(E); *see Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 485–86, ¶ 11 (2006) ("Limiting the actions of each branch of government to those conferred upon it by the constitution is essential to maintaining the proper separation of powers.").

¶24 Burns argues in the alternative that the Commission's decision not to enforce his subpoenas was arbitrary and capricious. But this argument specifically challenges the June 27, 2017 order, and under A.R.S. § 40-254(A), only parties in interest or the attorney general may bring such a challenge:

> Except as provided in § 40-254.01, any party in interest, or the attorney general on behalf of the state, being dissatisfied with an order or decision of the commission, may within thirty days after a rehearing is denied or granted, and not afterwards, commence an action in the superior court in the county in which the commission has its office, against the commission as defendant, to vacate, set aside, affirm in part, reverse in part or remand with instructions to the commission such order or decision on the ground that the valuation, rate, joint rate, toll, fare, charge or finding, rule, classification or schedule, practice, demand, requirement, act or service provided in the order or decision is unlawful, or that any rule, practice, act or service provided in the order is unreasonable.

*See also* A.R.S. § 40-254.01(A) (a party in interest may appeal Commission orders "involving public service corporations and relating to rate making or rate design" to the court of appeals). Other than by a writ of mandamus from the Arizona Supreme Court, this procedure to challenge commission orders is exclusive. A.R.S. § 40-254(E). Accordingly, only a "party in interest" or the Arizona Attorney General can challenge a decision by the Commission. Here, the Attorney General has not sought to intervene, and Burns can challenge the decision only if he is a "party in interest" under § 40-254(A).

¶25 Burns recognizes that he "is not a party," but "instead is a regulator." Nevertheless, he asserts that courts have permitted the type of arguments he raises. But the cases on which Burns relies were brought by interested parties to the proceeding, not by a member of the Commission. *See State ex rel. Corbin v. Ariz. Corp. Comm'n*, 143 Ariz. 219, 233 (App. 1984); *Polaris*, 133 Ariz. at 503 (noting that the Commission "entered a cease and

8

desist order" and "issued several subpoenas duces tecum to gather information *from Polaris and its bank*") (emphasis added); *Western Gillette, Inc. v. Ariz. Corp. Comm'n*, 121 Ariz. 541, 542 (App. 1979).

**¶26** Burns also asserts that under *Carrington*, a court "can measure whether an investigatory subpoena is properly authorized or not." But as with the other cited cases, *Carrington* involved a party's challenge to an action of the Commission, not a challenge by a commissioner who cast a dissenting vote. 199 Ariz. at 304, ¶¶ 2–3. And as noted above, we grant the Commission "wide berth" in determining the scope of its investigations. *Id.* at 305, ¶ 8. Accordingly, the authority on which Burns relies establishes only that an interested party or the Arizona Attorney General is entitled to challenge the Commission's determination not to enforce a subpoena in a rate case. Because Burns is neither, he was not entitled to bring such a challenge.

## III. Standing to Disqualify Other Commissioners.

**¶27** Burns also challenges the superior court's determination that he lacked standing to seek disqualification of other commissioners, arguing that due process "require[s] a fair tribunal made up of commissioners whose impartiality cannot reasonably be questioned." Burns cites *Horne v. Polk* for the proposition that "[a] quasi-judicial proceeding 'must be attended, not only with every element of fairness but with the very appearance of complete fairness.'" 242 Ariz. 226, 234, ¶ 28 (2017) (quoting *Amos Treat & Co. v. Sec. & Exch. Comm'n*, 306 F.2d 260, 266–67 (D.C. Cir. 1962)). In *Horne*, however, it was a *party* to an administrative hearing—not an adjudicator—who complained that a county attorney appointed to investigate alleged campaign finance violations was biased based on her role in prosecuting the matter before she was subsequently appointed as an adjudicator. *Id.* at 228, ¶¶ 2–5.

**¶28** The *Horne* court held that an appearance of potential bias arose because the regulatory agency adjudication process "involve[d] the same official as both an advocate and the ultimate administrative decisionmaker." *Id.* at 231, ¶ 16. Here, Burns does not contend that any other commissioner advocated for the APS Parties in the Rate Case. Citing *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886 (2009), Burns instead contends that due process "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." But *Caperton*, like *Horne*, involved a bias challenge raised by a party to litigation. 556 U.S. at 874–75.

**¶29** Burns also cites *State v. Woods*, 237 Ariz. 214, 221, ¶ 27 (App. 2015), in which we recognized that "courts commonly require trial judges to poll jurors when [the jurors'] impartiality is called into question." But Burns was not a judge polling the actual decision-makers in a rate case; he was a co-equal decision-maker with those he alleges were biased.

**¶30** In sum, Burns has not established that anyone other than a party to a proceeding before the Commission has standing to raise a due process challenge to a ruling by the Commission. *See also State v. Ellison*, 213 Ariz. 116, 128, ¶ 37 (2006) ("*[T]he party* moving for change of judge must prove a judge's bias or prejudice by a preponderance of the evidence.") (emphasis added and citation omitted); *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 63, ¶ 29 (App. 2010) ("*A party* challenging a trial judge's impartiality must overcome the presumption that trial judges are 'free of bias and prejudice . . . .'") (emphasis added and citation omitted). Accordingly, the superior court did not err by concluding that Burns lacked standing to seek to disqualify other commissioners from participating in the Rate Case.

## IV. Specific Requests for Declaratory Relief.

**¶31** Burns also contends the superior court erred by declining to issue a declaratory judgment on "multiple conclusions that resolved contested issues about [his] rights in his favor." We disagree.

**¶32** Under the Declaratory Judgments Act, "[a]ny person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." A.R.S. § 12-1832.

**¶33** Burns argues that this provision "provides a right to relief on any sub-set of disputed rights whose resolution will help the parties define their ongoing interactions." But that right is not absolute; a court may decline to enter a declaratory judgment if it "would not terminate the uncertainty or controversy giving rise to the proceeding." A.R.S. § 12-1836.

**¶34** Here, Burns sought a declaratory judgment to give effect to the superior court's rulings in his favor on the motion to dismiss his first amended complaint. Burns sought in particular a ruling:

> a. That the powers Commissioner Burns has as a Commissioner to inspect records, books, papers, business,

methods and affairs of corporations under A.R.S. § 40-241(A) apply to [Pinnacle West] as well as to APS . . .;

b. That Commissioner Burns' investigatory subpoenas did not encroach on powers that are constitutionally entrusted to other branches of government . . .;

c. That the Court was unable to decide the Defendants' First Amendment defenses to Commissioner Burns' investigatory subpoenas without further responsive Pleadings and factual development in the proceedings . . .; and

d. That it is "plain that the provisions of Ariz. Const., Art. XV, § 4 and A.R.S. § 40-241(A) each authorize Commissioner Burns to seek information from [APS and Pinnacle West] by subpoena on his own authority and without prior approval of the Commission as a whole" . . . .

But none of these rulings, if issued in a judgment, would have terminated the controversy because the primary issue was not whether Burns could issue discovery requests, but rather whether he could unilaterally enforce compliance with those requests in a rate case. Accordingly, the court did not err by declining to grant specific declaratory relief on these issues. *See Moore v. Bolin*, 70 Ariz. 354, 357 (1950) ("[C]onstitutional questions will not be determined abstractly or in a hypothetical case, or anticipated in advance of the necessity for determination thereof . . . .") (quoting 16 C.J.S. Constitutional Law § 94, p. 211); *see also Polaris*, 133 Ariz. at 505 (court lacks authority to enter a declaratory judgment on a "mere difference of opinion" on a constitutional question); *Citizens' Comm. for Recall of Jack Williams v. Marston*, 109 Ariz. 188, 192–93 (1973) ("[T]he declaratory judgment act was not intended to constitute a fountain of legal advice . . . .").

## V. Attorney's Fees.

¶35　　　　Burns requests attorney's fees on appeal under A.R.S. §§ 12-348.01 and -1840. Because Burns is not the prevailing party, he is not entitled to fees under § 12-348.01, and in the exercise of our discretion, we decline to award fees under § 12-1840.

## CONCLUSION

¶36        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA