NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANTHONY MARKS, *Appellant.*

Nos. 1 CA-CR 17-0553; 1 CA-CR 17-0630 (Consolidated)
FILED 10-23-2018

Appeal from the Superior Court in Maricopa County
Nos. CR2015-005294-001; CR2014-150609-001
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Jennifer B. Campbell joined.

**B E E N E**, Judge:

¶1          This appeal was timely filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969) following Anthony Marks' ("Marks") convictions for second-degree murder, disorderly conduct, and two counts of aggravated assault. Marks' counsel searched the record on appeal and found no arguable question of law that is not frivolous. *See State v. Clark*, 196 Ariz. 530 (App. 1999). Counsel now asks us to search the record for fundamental error. Marks was given the opportunity to file a supplemental brief in *propria persona* and elected to do so. After reviewing the entire record, we affirm Marks' convictions and sentences.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2          On September 9, 2015, K.L.'s apartment was burglarized. She informed her boyfriend, D.W., of the burglary, and he came over to the apartment to check on K.L. Once in the apartment, they noticed Marks on a neighboring balcony looking at them and pointing suspiciously. D.W. asked Marks if he had anything to do with the break-in. An argument between these two individuals ensued, ending with D.W. cursing at Marks. K.L. calmed D.W. down and they walked away from the argument.

¶3          Following the argument, K.L. and D.W. went to the parking lot, where they encountered Marks walking towards them. D.W., grabbing his pepper spray, confronted Marks, asking him what he had in his pocket. As Marks pulled a gun out of his pocket, D.W. sprayed him with the pepper spray. Marks then blindly fired three shots and ran from the scene. As D.W. chased after him, Marks fired two shots behind him, killing D.W.

---

[1]     "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶¶ 2-3 (App. 2015) (citation omitted).

Neighbors who witnessed the incident identified the shooter as Marks to the investigating officers.

¶4    Marks was charged with one count of first-degree murder, a class 1 dangerous felony, two counts of aggravated assault, both class 3 dangerous felonies, one count of disorderly conduct, a class 6 dangerous felony, and two counts of misconduct involving weapons, class 4 felonies.[2] Marks was tried and found guilty of second-degree murder, two counts of aggravated assault, and disorderly conduct, and was sentenced to a total of 20 years in prison.

¶5    We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.    Jury Instructions.

¶6    Marks asserts that the superior court erred when it denied his requested jury instructions on cross-racial identification and eyewitness identification.  At trial, Marks relied on an unreported decision discussing California's revised jury instructions to argue that the superior court should instruct the jury on cross-racial identification.  The State objected to the instruction because the California case was not binding, there is no standard jury instruction for cross-racial identification in Arizona, and Marks presented no expert testimony regarding the identification.  The superior court found that the cases cited by Marks did not establish that the instruction should be given, nor did Marks present any evidence showing that cross-racial identifications are more difficult.  Because there was no evidence in the case to support the California instruction, the court denied Marks' request.

¶7    Marks also requested an instruction on eyewitness identification.  *See* Rev. Ariz. Jury Instr. ("RAJI") 39.  However, the court found that the requested instruction was not appropriate because it specifically addressed pretrial, in-court identification issues.  As there was no previous in-court identification of Marks, the court refused to give the instruction and directed counsel to address the validity of any witness identification of Marks during closing arguments.

---

[2]    The two counts of misconduct involving weapons were severed from the trial and dismissed without prejudice at sentencing.

¶8        "The decision to refuse a jury instruction is within the trial court's discretion, and this court will not reverse it absent a clear abuse of that discretion." *State v. Bolton*, 182 Ariz. 290, 309 (1995) (citation omitted). The superior court's failure to "give an instruction is not reversible error unless it is prejudicial to the rights of a defendant and such prejudice appears on the record." *State v. Barr*, 183 Ariz. 434, 442 (App. 1995) (citation omitted). "Closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions." *State v. Bruggeman*, 161 Ariz. 508, 510 (App. 1989) (citations omitted).

¶9        Here, the jury instructions were correct statements of law. The jury was instructed on burden of proof, presumption of innocence, and credibility of witnesses. These instructions adequately covered the issue of identification. Further, during closing arguments, defense counsel was given the opportunity to challenge the identification evidence. Accordingly, we find that the superior court did not abuse its discretion in refusing to include these instructions.

## II.    Identification Testimony.

¶10        Marks argues the superior court erred when it "denied the Dessureault[3] motion . . . regarding all victims and witnesses." He asserts this was an abuse of discretion as the pretrial identification procedures were unduly suggestive; however, he provides no support for this conclusion.

¶11        Before trial, Marks filed a motion to preclude in-court identification testimony from one eyewitness who identified him in a photo lineup at the time of the crime. He filed a separate motion *in limine* to preclude in-court identification from another witness who identified Marks in the photo lineup because he heard the altercation with D.W. and was familiar with Marks' voice.

¶12        The superior court held a *Dessureault* hearing wherein the officer who performed the photo lineup testified. Marks argued the photo lineup was unduly suggestive because the officer told one witness to "take [her] time," asked a question to clarify where she had seen Marks, and the lineup did not include a photo of another African American neighbor who lived near Marks. Marks also argued that the second witness should be precluded because he made inconsistent statements to law enforcement regarding what he had seen and heard but was shown the photo lineup anyway.

---

3        *State v. Dessureault*, 104 Ariz. 380 (1969).

¶13 The superior court properly found that the State proved by clear and convincing evidence that the photo lineup utilized for both witnesses was not unduly suggestive. Thus, the court satisfied the requirements of *Dessureault*. *See State v. Dessureault*, 104 Ariz. 380, 384 (1969) (outlining effective procedures for trial courts in situations where pretrial identifications of defendants have been made).

## III. Jury Misconduct.

¶14 Marks argues the superior court erred when it denied his motion for a mistrial after jurors disregarded the admonition and discussed the case before deliberations. Several days into trial, Marks moved for a mistrial after receiving word that jurors were discussing the case amongst themselves and may have expressed negative views of Marks' counsel. Marks argued that the jurors' comments demonstrated they were shifting the burden away from the State.

¶15 The court denied the motion but polled each juror to determine what was said, whether they had formed any final opinions regarding the case, and whether they understood the burden of proof. The polling revealed that none of the jurors had formed final opinions regarding the case and all of them understood the burden of proof. The comments made were attributed to one juror. On one occasion, the juror made a joke about Marks' counsel's choice of wardrobe; on another, he commented that the counsel's questions were confusing. The superior court dismissed the juror who made the comments.

¶16 "[J]uror misconduct warrants a new trial if the defense shows actual prejudice or if prejudice may be fairly presumed from the facts." *State v. Miller*, 178 Ariz. 555, 558 (1994) (citing *State v. Vasquez*, 130 Ariz. 103, 105 (1981)). "Declaring a mistrial is the most drastic remedy for trial error and should be granted only when justice will be thwarted if the current jury is allowed to consider the case." *State v. Woods*, 237 Ariz. 214, 217, ¶ 5 (App. 2015) (citations and quotations omitted). The superior court may properly excuse a juror for cause after evidence has been received. *Evans v. Abbey*, 130 Ariz. 157, 159 (App. 1981).

¶17 Here, the superior court ensured Marks was not prejudiced by the improper comments by questioning each member of the jury. The court remedied the issue by dismissing the one juror who had made comments regarding Marks' attorney. Thus, the superior court did not abuse its discretion when it denied Marks' motion for a mistrial. *Cf. Evans*, 130 Ariz. at 160 (concluding trial court erred in declaring mistrial when

juror misconduct could have been cured by questioning and dismissal of alternate).

## IV.    Review of the Record.

¶18        In addition to evaluating the arguments raised in Marks' supplemental brief, we have conducted an independent review of the record.    The record reflects no fundamental error in pretrial or trial proceedings.   Marks was represented by counsel and present at all critical stages of the proceedings.   The superior court conducted a *Donald*[4] hearing with Marks.

¶19        The jury was properly comprised of twelve jurors and two alternates.    The State presented direct and circumstantial evidence sufficient for a reasonable jury to convict.   The court appropriately instructed the jury on the elements of the charges.   The key instructions concerning burden of proof, presumption of innocence, reasonable doubt, and the necessity of a unanimous verdict were also properly administered. The jury returned unanimous verdicts finding Marks not guilty of first-degree murder, guilty of the lesser-included offense of second-degree murder, and guilty on the remaining two counts of aggravated assault and one count of disorderly conduct.   The jury also unanimously found that the State proved four aggravators for each count.

¶20        The superior court held a trial to prove Marks' prior convictions and properly found that Marks had two prior felony convictions.    The court received a presentence report, accounted for aggravating and mitigating factors, and provided Marks an opportunity to speak at sentencing.   The court properly imposed a legal sentence for the crimes of which he was convicted.

## CONCLUSION

¶21        We have reviewed the entire record for reversible error and find none; therefore, we affirm the convictions and resulting sentences.

¶22        After the filing of this decision, defense counsel's obligation pertaining to Marks' representation in this appeal will end.   Defense counsel need do no more than inform Marks of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue appropriate for submission" to the Arizona Supreme Court by petition for review.  *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).   On the Court's own

---

4        *State v. Donald*, 198 Ariz. 406 (App. 2000).

motion, Marks has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* motion for reconsideration. Further, Marks has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA